[No. 7,620. Department One.—June 11, 1884.]

BANK OF HEALDSBURG, APPELLANT, v. JOHN N. BAILHACHE AND JOSEPHINE BAILHACHE, RESPONDENTS.

DEED—DELIVERY.—A deed takes effect from its delivery, and if delivery is wanting, it is void *ab initio.*

ID.—Where a deed was executed to a bank, and the notary handed it to one of the directors, who was instructed by the grantor that the deed was not to be delivered to the bank until certain matters in dispute between the grantor and grantee were settled, *held* that there was no delivery.

ID. — ACCEPTANCE — AUTHORITY OF DIRECTORS. — To constitute a delivery of a deed there must be an acceptance by the grantee. Power to make a settlement of a defalcation to a bank, and accept a deed of real estate in satisfaction and release, is a function of the board of directors, and not of any individual director or officer.

ID. — MARRIED WOMAN. — The deed of a married woman has no validity, and is not in a condition to be delivered or accepted until it is acknowledged and certified as required by sections 1186 and 1191 of the Civil Code.

APPEAL from a judgment of the Superior Court of Sonoma County.

Action to quiet title. The remaining facts are stated in the opinion of the court.

*George 'A. Johnson*, for Appellant.

*J. H. McGee, J. P. Hoge*, and *L. A. Norton*, for Respondents.

McKEE, J. — The existence and validity of a deed as translative of the title of a married woman to a tract of land, held as her separate estate, is the question presented for consideration in this case. Josephine Bailhache, the wife of her co-defendant, John Bailhache, was seized in fee as her separate property of the land described in the pleadings. On the 12th of June, 1880, she executed a deed of it to the plaintiff. Delivery of the deed at the time of its execution is affirmed by the plaintiff and denied by the defendants. If it was not delivered it is not her deed; for one of the essential requisites of a good deed is that it be delivered by the grantor or his attorney. A deed takes effect only from its tradition or delivery; and if it wants delivery, it is void *ab initio*. (2 Blackst. Com. 308; *Barr* v. *Schroeder*, 32 Cal. 610.) "Delivery is either actual, i. e., by doing something and saying nothing, or else verbal, i. e., by saying something and doing nothing, or it may be by both. And either of these may make a good delivery and perfect deed; for otherwise, albeit it be never so well sealed and written, yet is the deed of no force. And though the party to whom it is made take it to himself or happen to get it into his hands yet will it do him no good, nor him that made it any hurt until it be delivered. And a deed may be delivered by the party himself that doth make it, or by any other by his appointment or authority precedent, or

assent or agreement subsequent, for *omnis ratihabitio mandato æquiparatur.*" (1 Shep. Touch. 57.)

Here the deed was well executed; and, after its execution, it was placed in the hands of a person who was, at the time he received it, a director of the bank of Healdsburg; but when he received it the grantors forbade him from delivering it to the bank until the consideration for which it had been executed was fully arranged between them and the bank. This action by the defendants involved or resulted in a disagreement as to what was the consideration. But notwithstanding the disagreement, the plaintiff contends that the deed was in fact delivered in the circumstances attending its execution.

The circumstances were these: John Bailhache was cashier and one of the directors of the bank of Healdsburg; at the same time Jonas Bloom was president and also one of its directors. While acting as cashier, Bailhache had overdrawn his account with the bank to the extent of about ten thousand dollars; and he owed the firm of "Bloom & Cohn" (of which firm Jonas Bloom was a member), twelve thousand three hundred dollars, secured, in part, by stock in said bank belonging to the debtor. When the amount of Bailhache's overdraft was discovered, the directors of the bank verbally notified him that he must make his account good or resign. Upon this notification, Bailhache made out his resignation, signed it, and delivered it to one of the directors. There was no meeting of the directors called to consider it, nor does there appear to have been any official notice taken of the delinquency or the resignation. While the matter stood in that condition, Bailhache informed two of the directors that he had induced his wife to convey her land to the bank in satisfaction of his debt, in consideration that the bank would release him from the debt, loan him the further sum of five hundred dollars, and retain him as cashier at a salary of one hundred dollars per month. Upon that information the two directors returned to him his resignation, delivered him the key of the bank, and restored him to his position as cashier. This was done "with the individual consent of each director."

For the purpose of completing the arrangement, Mrs. Bailhache and her husband met with two of the directors, ready to execute and deliver their deed. A deed in proper form was

prepared. The husband executed and acknowledged it, and immediately handed it to one of the directors for the signature and acknowledgment of his wife. When the deed was laid before her she refused to sign; but after a brief hesitation she signed it in the presence of Bloom, the president of the bank, and *passed it to him,* and he passed it, "at once," to a notary who was present, to take her acknowledgment. She acknowledged the deed according to the legal ceremony; and the notary took it to his office to append his certificate. Having attached his certificate in due form, he started with the deed to deliver it, in its completed form, to Mrs. Bailhache. On the way he met with one of the directors of the bank, named Wilson, to whom he handed the deed. But as soon as Wilson received it, the defendants called to him and told him not to deliver it until matters between them and the bank were fully arranged. Wilson promised to do as they requested; and he took the deed home with him, and kept it, from the day he received it from the hands of the notary, until the 16th of June, 1880, when he returned it to Mrs. Bailhache, upon her demand. She afterwerds refused to deliver it, because, as she declared, the president of the bank had not kept faith with her in carrying out the arrangement upon which she had consented to execute it.

Whether the reason she gave was true or false has no direct bearing on the question of the delivery of the deed arising out of the circumstances attending its execution. The contention of the plaintiff that the deed was delivered when Mrs. Bailhache signed it in the presence of the notary, and silently passed it to Bloom, the president of the bank, cannot be successfully maintained; for although signed, the deed was not acknowledged and certified according to law, and until the deed of a married woman is acknowledged and certified according to the formalities prescribed by sections 1186 and 1191 of the Civil Code, it has no validity, and is not in a condition to be delivered or accepted. "If a man seal and acknowledge before a mayor or other officer appointed for that purpose, a writing for a statute or recognizance, this acknowledgment before such officer shall not amount to a delivery of the deed so as to make it a good obligation, if it happen not to be a good statute or recognizance." (1 Shep. Touch. 58.)

Nor did a delivery take place when the notary handed the deed, as a completely executed deed, to Wilson, one of the directors of the bank, who, when he received it, promised not to deliver it until matters between the parties to it were arranged. In receiving and promising thus to hold it, Wilson acted as the depositary of the deed and as the agent of Mrs. Bailhache. As her agent he had no authority to deliver it until he received instructions from her to that effect. No such instructions were given to him; and he recognized his position by afterwards returning the deed to his principal. (*Fitch* v. *Bunch*, 30 Cal. 208.)

Besides, to constitute delivery of a deed there must not only be delivery by the grantor, but an acceptance by the grantee. In the case in hand the minds of grantor and grantee seem never to have met upon the subject of the execution and delivery of the deed in settlement of the affairs of the bank, for neither before nor after the discovery of the deficit in the accounts of the cashier was there any meeting of the board of directors to consider the accounts; and at no time during the individual transactions of some of the directors with the cashier in relation to his accounts with the bank, or the possession of the deed by Wilson, did the board of directors at a regular meeting, by resolution or otherwise, authorize a settlement with the cashier upon a basis of a conveyance to the bank by Mrs. Bailhache of her separate real estate. Power to make such a settlement, and to accept such a deed for that purpose, was a function of the board of directors, and not of the president of the bank nor of any individual director, nor executive officer. The attempt by an individual officer to exercise such a function, without the assent and authority of the board of directors expressed at a regular meeting, was therefore irregular, and beyond the sphere of his action.

*Crowley* v. *Genesee M. Co.* 55 Cal. 275 ; *McKiernan* v. *Lenzen*, 56 Cal. 61 ; *Seeley* v. *San Jose M. & L. Co.* 59 Cal. 22, and *Shaver* v. *Bear River & A. W. M. Co.* 10 Cal. 400, are not in conflict with this conclusion. Those causes were decided upon the broad principle that, while the authority of all officers or agents of a corporation must be limited to such modes of binding the corporation as result from the nature of their duties and

the powers conferred upon them, yet where the corporation itself holds out to the public that its officers or agents have authority to act according to the general usage, practice, and course of its business, the acts of such agents within the scope of such usage, practice, and course of business will be binding upon the corporation in favor of third persons possessing no knowledge to the contrary. But the settlement of a defalcation to a bank, and the acceptance of a deed of real estate in satisfaction and release, are not transactions which fall within the ordinary powers of a corporation, which may be exercised by its agents or persons who are held out to the public as such. Power to do such acts must be conferred by the board of directors. (*Gashwiler* v. *Willis*, 33 Cal. 11; *Blen* v. *Bear River Co.* 20 Cal. 602.)

Judgment affirmed.

McKINSTRY, J., and ROSS, J., concurred.