[Civ. No. 880.    Third Appellate District.—February 15, 1912.]

## E. M. STEVENS, Respondent, v. SELMA FRUIT COMPANY, INC., a Corporation, Appellant.

COMMERCIAL CORPORATION—POWER OF OFFICER TO EXECUTE NOTE—RECORD AUTHORITY NOT CONFERRED—IMPLICATION—POWER TO TRANSACT BUSINESS.—Although no record proof appears that any particular officer of the defendant, as a commercial corporation, was specifically authorized by its board of directors to execute notes on its behalf, yet, upon the question of implied authority, it is to be considered that the very nature of commercial corporations requires that the authority to transact their ordinary business affairs shall be vested in one or more persons; and its president or general manager, or whoever may be given immediate direction or control of its affairs, is its agent, empowered, unless expressly restricted to certain specified acts, to do anything which naturally and ordinarily has to be done to carry out its paramount purposes.

ID.—INFERENCE FROM GENERAL AUTHORITY.—Where authority to do some particular act, which is included within the ordinary affairs of a commercial corporation, is not specifically given to any particular officer, and the performance of which is not specifically inhibited to the person authorized to manage its affairs generally, the intention of the board of directors to confer authority upon the person or officer in whom is vested the immediate direction or control or management of the affairs of such corporation to perform such particular act will be inferred from the general authority so given.

ID.—OFFICER HELD OUT BY CORPORATION AS HAVING GENERAL AUTHORITY —OSTENSIBLE AUTHORITY—ESTOPPEL.—Where an officer of a corporation is held out by the corporation to be possessed of power to perform all acts involved in its ordinary or usual business, the law will not permit third parties to suffer from such acts of the officer by the plea of the corporation that the ostensible authority of such officer was not in fact conferred upon him.

ID.—ACTION OF SECRETARY AND MANAGER IN EXECUTING NOTES UNDER SEAL—PRESUMED KNOWLEDGE OF DIRECTORS—SANCTION.—In an action upon a note of the defendant corporation executed by its secretary and manager, under the corporate seal, representing the proceeds of fruit shipped by the corporation, the money for which was collected and held by it, where such secretary and manager testified that he had as such officer executed other notes for the corporation under its seal, as acts of the corporation, and that his authority to do so was never questioned by the board of directors or by its president, the board must be presumed to have had knowledge of such acts, and to have authorized the same, as the course of the corporate business may require.

Id.—Reasonable Construction of Resolution of Directors—Implied
Power of Manager to Execute Notes.—It is held that under a
reasonable construction of a resolution of the board of directors of
the defendant corporation, its manager had implied power to execute
notes in the conduct of its business in favor of parties to whom it
became indebted, where by its terms he was authorized "to purchase
the necessary supplies and to buy and sell the goods and products
in which the corporation intends to deal," and was given "the im-
mediate direction, of said operations," and it was provided "that
the authority of its president shall be exercised over and through
its manager, so long as he shall properly conduct said business and
operations."

Id.—Ratification of Note in Suit by President.—Where there is no
question as to the power of the president of the corporation to exe-
cute a note in its behalf, and the fact is undisputed in the record
that the president authorized the manager to pay the note in suit,
as a liability of the corporation upon its maturity, he thereby ratified
the act of the manager in executing the note.

Id.—Contract by Former Corporation for Sale of Raisins—Business
Assumed by Defendant—Delivery and Collection—Note—Un-
tenable Defense.—Although a contract for the sale of raisins
belonging to a firm of which plaintiff was a member was made by
a former corporation, whose business was taken over by the defend-
ant, as a new corporation, as of a date when said contract had not
been executed by delivery, and defendant, after the organization,
delivered the raisins to the party who had contracted therefor, and
collected the money, which it wished to retain in its business, and
upon settlement therefor the note in suit was given, a defense to
the note on the ground that defendant had no relation to the con-
tract of the former corporation and that the note is without con-
sideration is untenable.

Id.—Presumption of Consideration of Note—Burden of Proof not
Sustained.—The note in suit is presumed to have been given for a
sufficient consideration, and defendant has the burden of proof to
show that it was given without consideration. That burden is not
sustained where it appears unquestionably that the note was given
for money collected by defendant which belonged to plaintiff's firm
and was borrowed by defendant therefrom.

Id.—Immaterial Question—Action of Defendant as Broker.—In
such case, the question whether the defendant in delivering the raisins
in execution of the former contract with the former corporation, and
in collecting the money therefor, acted as a broker in the sale of the
raisins or not is immaterial.

Id.—Assignment of Firm Right to Plaintiff by Copartner.—Where
both members of the firm of Stevens & Son, with which the settle-
ment was made by defendant, and to which its note in suit was

given, testified that before the commencement of the action R. E. Stevens, the son, transferred and assigned all his interest in the account and note in question to his father, E. M. Stevens, who is plaintiff in the action and respondent upon appeal, it is held that such assignment was valid and vested the sole ownership of the account and note in plaintiff. It was not necessary that the assignment should have been made by the firm.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

M. K. Harris, and N. C. Coldwell, for Appellant.

M. G. Gallaher, Everts & Ewing, and S. L. Strother, for Respondent.

HART, J.—The complaint in this action counts upon two causes of action, viz.: 1. Upon a promissory note for the sum of $2,902.55, payable one hundred days after the date of its execution, October 5, 1908, together with interest at the rate of eight per cent per annum, said note, so it is alleged, having been made and delivered by the defendant to E. M. Stevens & Son, a copartnership; 2. Upon an account stated on the fifth day of October, 1908, by and between said copartnership, E. M. Stevens & Son, and the defendant Selma Fruit Company, Inc., "for a balance due for moneys received by said defendant for said E. M. Stevens & Son, on account of raisins sold by and through said defendant, less charges for brokerage, discount and packing charges, upon the statement of which said account it appeared that the said defendant was indebted to the said E. M. Stevens & Son in the sum of $2,902.55." The transactions culminating in the execution and delivery of the promissory note and the rendering of the stated account are alleged to have taken place at the same time, and that both the note and the stated account involve the same indebtedness.

It appears from the complaint that, antecedently to the institution of this action, R. E. Stevens, one of the copartners, assigned to plaintiff, E. M. Stevens, all his right and interest in and to said promissory note and the stated account, and

that the plaintiff is the owner and holder of both said note and said account.

Judgment is asked for in the sum of $2,902.55 and interest on said sum from the date of the execution and delivery of said note.

The answer first denies generally the averments of the complaint as to the first cause of action and then sets up the plea that the promissory note therein declared upon was "executed and delivered without any consideration."

The allegations of the second count of the complaint are denied, and, additionally, and by way of a special defense, it is charged that the alleged account and the promise to pay the same were stated and made by T. H. Elliott, the manager of the defendant, under a mistaken belief that the transactions as to which said account was stated were had and conducted between said copartnership and his defendant; whereas, so it is alleged, said transactions were had between said E. M. Stevens & Son and Selma Fruit Company, a corporation, of which more will be learned in the course of this opinion, and that defendant was not concerned or connected with said transactions.

Judgment passed for the plaintiff in the sum evidenced by the note and accrued interest.

This appeal is by the defendant from said judgment and the order denying it a new trial.

A full and accurate statement of the facts leading to this action is embodied in the brief of the respondent, and we deem it convenient to adopt said statement as a recital of the facts in this opinion:

"The Selma Fruit Company was, during all the times mentioned in the complaint, a corporation duly organized under the laws of the state of California, and from January, 1908, until the first day of August, 1908, the said Selma Fruit Company owned and operated a packing-house in the town of Selma, county of Fresno, state of California, and was engaged in the business of buying, packing and selling raisins, both upon its own account and for others. It also appears that during the winter months of 1908, and after the 1st of January, 1908, E. M. Stevens & Son delivered certain raisins to the warehouse of said Selma Fruit Company and for which weigh tags were duly issued to E. M. Stevens & Son. It

further appears from the evidence that on the ninth day of April, 1908, said Selma Fruit Company took up the weigh tags for said raisins and issued to said E. M. Stevens & Son a warehouse receipt for the raisins so delivered to said company, being the same raisins represented by the weigh tags theretofore delivered to E. M. Stevens & Son and at that time taken up by said company.

''The said Selma Fruit Company was instructed by said E. M. Stevens & Son to receive offers for said raisins and submit any offers received by said company for said raisins to said E. M. Stevens & Son. About July 8, 1908, Jas. R. Baker & Company, of Chicago, offered to buy from said Selma Fruit Company raisins, which offer was submitted to said E. M. Stevens & Son and by them approved. On July 17, 1908, said Selma Fruit Company and one T. H. Elliott entered into an agreement to sell to certain parties certain patent applications of said T. H. Elliott, together with all of the property, real and personal, packing-house, business and goodwill of said Selma Fruit Company, the purchaser of said property purchasing the same for a corporation thereafter to be formed.

''The purchasers of said property constituted a committee whose business it was to procure said property and business and to form a corporation for the purpose of taking over all of said properties and business and to carry on the business of buying and selling and dealing in fruits and raisins and conducting a general packing business. On August 1, 1908, said committee entered into a contract with said Selma Fruit Company and said T. H. Elliott in pursuance of said original agreement to purchase, in which it was agreed that the business referred to should be conducted by the Selma Fruit Company under its then organization commencing August 1, 1908, for and on behalf of said corporation to be formed by said committee. 'Said Selma Fruit Company shall continue to operate said business until said new corporation shall be formally organized and shall by formal resolution take over the operating of said business for its own account. All the contracts made by Selma Fruit Company for the delivery of dried fruit and raisins *by growers* on and *after August* 1, 1908, shall be carried out by said Selma Fruit Company, for and on behalf of said new corporation.'

"Said Selma Fruit Company conducted the business in which it had theretofore been engaged from and after August 1, 1908, for and on behalf of the new corporation to be organized, and a new corporation was organized in pursuance of the agreements of said committee and by formal resolution passed by the unanimous vote of the stockholders at the meeting of stockholders of said new corporation, the Selma Fruit Company, Inc., on September 5, 1908, all of the work of said organizing committee was ratified and approved, said committee having made a full report to said stockholders' meeting, and all said properties and business of said Selma Fruit Company together with all said patent applications of said T. H. Elliott, including all trademarks and brands belonging to said business had been formally taken over by the board of directors of said Selma Fruit Company, Inc., at a meeting thereof held August 17, 1908. By act of the board of directors of the Selma Fruit Company, Inc., and by unanimous vote of the stockholders of said Selma Fruit Company, Inc., all of the work of said committee of organization was duly ratified and all of the business of the Selma Fruit Company was taken over as of August 1, 1908, from which time it was operated by the Selma Fruit Company for and on behalf of the Selma Fruit Company, Inc., being under the advice and control of said committee, until the time of the formal resolution of the new company taking over the business, after which the business was operated and controlled by the new corporation, Selma Fruit Company, Inc., for and on its own behalf.

"The raisins delivered by said E. M. Stevens & Son were held from and after August 1, 1908, until about the middle of September, 1908, at which time they were shipped to Jas. R. Baker & Co. with other raisins with which they had been mingled after being stemmed and seeded, and the Selma Fruit Company, Inc., received the money paid for all said raisins of E. M. Stevens & Son, for which said Selma Fruit Company, Inc., by its secretary and manager, rendered a stated account and executed and delivered to E. M. Stevens & Son a promissory note of said Selma Fruit Company, Inc., for the balance found due on said stated account."

The court found, among other things, that the defendant is a corporation engaged in the business of selling, packing, shipping and dealing in dried fruits and raisins, in the town

of Selma, Fresno county; that during the months of August and September, 1908, said E. M. Stevens & Son owned and had stored in the warehouse of the defendant certain raisins, and that, in the month of September, 1908, the "defendant sold, shipped and delivered said raisins and received the purchase price and all the proceeds of said sale of said raisins, and appropriated all the said money to its own use and that said sale and delivery of said raisins and the receipt of the proceeds thereof were by and with the consent of said E. M. Stevens & Son"; that, on the fifth day of October, 1908, the defendant and said E. M. Stevens & Son had an accounting between themselves, "and account was duly stated between defendant and said E. M. Stevens & Son, and it was found by said account stated that defendant owed said E. M. Stevens & Son the sum of $2,902.55, and defendant then and there agreed to pay to said E. M. Stevens & Son said sum of $2,902.55 so found due to said E. M. Stevens & Son from defendant, and said E. M. Stevens & Son then and there agreed with defendant that said sum of $2,902.55 was the balance due said E. M. Stevens & Son from defendant, and defendant agreed to pay said sum of $2,902.55 to said E. M. Stevens & Son, with interest thereon, at the rate of eight per cent per annum until paid"; that "said T. H. Elliott, as the manager of defendant, acted for and on behalf of defendant in stating said account between said defendant and said E. M. Stevens & Son, and said T. H. Elliott and defendant had full knowledge of the account between defendant and said E. M. Stevens & Son, and said account was not stated by mistake of said T. H. Elliott, or any other person, or of defendant, but said account was stated with full knowledge of all the facts at the hand and in the possession of defendant and its said manager and fully known to defendant and said manager"; that the net proceeds from the sale of said raisins of E. M. Stevens & Son constituted the consideration of the promissory note set out in the complaint, and that "said note was duly executed by defendant under its corporate seal."

The findings above referred to, based principally upon the testimony of T. H. Elliott, are challenged upon the ground that the evidence does not sustain them, and the conclusion of law therefrom and the judgment are attacked upon every con-

ceivable ground upon which anything like a plausible assault could well be predicated.

The crux of the whole controversy, as it is argued and submitted here, is immured within the proposition whether T. H. Elliott, the manager of the defendant, was, as such manager, clothed with authority to make the stated account and execute the note counted upon in the complaint for and on behalf of the defendant.

After the creation and organization of the new corporation (the defendant), T. H. Elliott was duly appointed as the manager thereof. By resolution or motion duly entered in the minutes of the meetings of the board of directors, the latter vested in the manager the authority "to employ and discharge the necessary labor in and about the packing-house of the corporation, to conduct the packing operations, to purchase the necessary supplies and to buy and sell the goods and products in which the corporation intends to deal, and *generally to conduct the affairs of the corporation, subject to the direction of the president, and this board."*

It was further ordered by the board of directors that "all contracts for the purchase or sale of dried fruit or raisins, or other products or merchandise to be dealt in by the corporation, or for packing material or supplies, be approved by both the president and the manager." The following is also a part of the order or resolution of the board, entered upon its minutes, relative to the powers of the manager and president: "The president of this corporation is hereby requested and instructed to visit the packing-house, at some time during every working day, during the active operations of the house, and to carefully oversee such operations in a general way, to require all contracts of purchase or sale as per previous resolution to be submitted to him for his approval, and generally to consult with and direct the manager in the conduct of the business of the corporation, it being understood that the immediate direction of said operations is in the hands of the manager and orders and directions regarding same shall be issued by him except in the event of flagrant abuse or neglect of such authority by said manager, *and that the authority of the president shall be exercised over and through the manager so long as said manager shall properly conduct said business and operations."*

There is in the record before us no evidence from which it appears that any particular officer of the defendant was specifically authorized by the board of directors to execute promissory notes for and on its behalf. The very nature of commercial corporations, of which the defendant is a type, requires that the authority to transact their usual or ordinary business affairs shall be vested in some one or more persons. A corporation is an artificial person, and where it is organized for commercial purposes its president or general manager or whoever may be given immediate direction or control of its affairs is its agent, empowered, unless expressly restricted to the performance of certain specified acts, to do anything which naturally and ordinarily has to be done to carry out its paramount purposes; and where authority to do some particular act, which is included within the ordinary affairs of such a corporation, is not specifically given to any particular officer, and the performance of which is not specifically inhibited to the person authorized to manage its affairs generally, the intention of the board of directors to confer upon the person or officer in whom is vested the immediate direction or control or management of the affairs of such corporation to perform such particular act will be inferred from the general authority so given. And where, as was clearly the case here, an officer of a corporation is held out by such corporation to be possessed of power to perform all acts involved in its ordinary or usual business, the law will not permit third parties to suffer from such acts of such officer by the plea of the corporation that the ostensible authority of such officer was not in fact conferred upon him. (*McKiernan* v. *Lenzen,* 56 Cal. 61; *Phillips* v. *Campbell,* 43 N. Y. 271; *Seeley* v. *San Jose Independent Mill & Lumber Co.,* 59 Cal. 22, 24; *Bank of Healdsburg* v. *Bailhache,* 65 Cal. 327, 332, [4 Pac. 106] ; *Jennings* v. *Bank of California,* 79 Cal. 323, 328, [12 Am. St. Rep. 145, 5 L. R. A. 233, 21 Pac. 852] ; *Greig* v. *Riordan,* 99 Cal. 316, 323, [33 Pac. 913] ; *Bates* v. *Coronado Beach Co.,* 109 Cal. 160, 162, [41 Pac. 855] ; *Wells, Fargo & Co.* v. *Enright,* 127 Cal. 669, 672, [49 L. R. A. 647, 60 Pac. 439] ; *Siebe* v. *Hendy Machine Works,* 86 Cal. 390, 392, [25 Pac. 14].)

In the case at bar, Elliott, the secretary and manager, testified that he had, as such officer of the defendant, executed, under the seal of the corporation, and as the acts of the cor-

poration, other promissory notes, and his authority to do so
never was questioned by the board of directors or president.
Of these acts by the manager, the board of directors must be
presumed to have had knowledge. In *Martin* v. *Webb,* 110
U. S. 7, [28 L. Ed. 49, 3 Sup. Ct. Rep. 428], the United States
supreme court, speaking through Mr. Justice Harlan, said:
"That which they ought, by proper diligence, to have known
as to the general course of business in the bank, they may be
presumed to have known in any contest between the corpora-
tion and those who are justified by the circumstances in deal-
ing with its officers upon the basis of that course of business."
(See, also, *Carpy* v. *Dowdell et al.,* 113 Cal. 677, [47 Pac.
695].)    It is further said in the *Martin* v. *Webb* case that the
authority of a particular officer of a corporation to do a par-
ticular act for and in the name of such corporation, where the
authority to do such act is not expressly conferred, may be in-
ferred from the general manner in which, for a period suffi-
ciently long to establish a settled course of business, he has
been allowed, without interference, to conduct the affairs of
such corporation.    In other words, his authority may be by
parol, and collected from circumstances.

In *Bank of Healdsburg* v. *Bailhache,* 65 Cal. 327, [4 Pac.
106], it is said: "While the authority of all officers or agents
of a corporation must be limited to such modes of binding the
corporation as result from the nature of the duties and the
powers conferred upon them, yet when the corporation itself
holds out to the public that its officers or agents have authority
to act according to the general usage, practice, and course of
its business, the acts of such agents within the scope of such
usage, practice and course of business will be binding upon
the corporation in favor of third persons possessing no knowl-
edge to the contrary."

No one can read the evidence in this record and reasonably
arrive at any other conclusion than that the defendant held
out to the public that its manager, Elliott, had full power to
do all things embraced within the ordinary and usual course
of its business, including the very common practice, when ne-
cessary, of executing promissory notes.

But we think that a fair, just and reasonable construction
of the above-noted order or resolution of the board of directors
defining the powers of the secretary and manager must include

therein the authority to execute promissory notes for the corporation where the exigencies of its business require such transactions. Counsel for appellant argue, however, that the general language of the first part of said order which reads, "and generally to conduct the affairs of the corporation, subject to direction of the president and this board," necessarily implies a limitation of the power of the manager to the exercise of the specific authority previously given—that is to say, that, he having been clothed with power to do certain specified acts with relation to the affairs of the corporation, the general language referred to means that he is to have *general power* only to do the acts specifically designated. But, even if it be granted that counsel are correct in their contention that the general power thus given is to be confined in its exercise to those matters as to which specific authority is conferred, or in other words, does not have the effect of enlarging the authority of the manager or extending it beyond that with which he is specifically vested, still, in our opinion, the language of the order specifying the powers of the manager is broad enough to include the authority to execute, when the exigencies of the corporation's business require it, promissory notes for the corporation and thus and thereby to bind it. The order provides, it will be noted, that the manager may *"buy and sell* the goods and products in which the corporation intends to deal," and it will not be disputed that, in the absence of an express negativing of such authority, the power in the manager to buy goods in which the corporation deals for the corporation implies and carries with it the power to pay for the goods from the latter's funds, or includes the authority to buy on credit, and to do such a usual thing as to give the note of the corporation as evidence of its obligation to pay. (*Siebe* v. *Hendy Machine Works,* 86 Cal. 390, [25 Pac. 14], and cases therein cited.) But throughout the entire order or resolution of the board of directors purporting to outline the duties and define the authority of the manager it is plainly manifest that the intention was to vest that officer with full power to transact the ordinary business of the corporation and to that end to do all things and perform all acts necessary to the execution of the general commercial purposes of the defendant. It will be observed that the authority of the president is supervisory only over the manager. All contracts of purchase or sale

must be, it is true, submitted by the manager to the president for the latter's approval, but it is expressly provided that the *immediate* direction of the operation of the business shall be vested in the manager.   The latter is clothed with all the authority of the president, "so long as said manager shall properly conduct said business and operations."   By this provision it is clear that it was intended to give full authority to the manager to perform all such acts as were required to be performed in the ordinary or usual course of the corporation's business.   The president no doubt possesses authority superior to that of the manager.   As to all corporations, the board of directors possess the ultimate power over their affairs, but it is true as to all corporations, as it is here, that, where to a particular officer or person is committed the immediate direction of their affairs, his act, within the scope of his authority, and arising in the transaction of the ordinary and usual business of the corporation, will be binding upon the corporation, unless such act has been expressly inhibited to. him under such circumstances as that the public or those having business with the corporation ought to know of the inhibition.   But even if it be conceded that the rendering of the stated account and the making of the note for the corporation involved an act in excess of the sphere of Elliott's authority as manager, it is nevertheless true that the fact stands undisputed in the record that the president, whose authority to execute promissory notes for the corporation is not and cannot be questioned, authorized Elliott to pay the note, as a liability of the corporation, upon its maturity, thereby ratifying the act of the manager in executing the note and thus fully recognizing the propriety of that act as one among those within the authority of the manager to perform.

But it is contended that the note is unsupported by a consideration.   It was, of course, incumbent upon the defendant to show a want of consideration, the presumption being that a promissory note was given for a sufficient consideration.   (Code Civ. Proc., sec. 1963, subd. 21; Civ. Code, secs. 1614, 1615; *Schallard* v. *Eel River Nav. Co.,* 70 Cal. 144, 146, [11 Pac. 590]; *Vaca Valley etc. R. R. Co.* v. *Mansfield,* 84 Cal. 560, 565, [24 Pac. 145]; *Underhill* v. *Santa Barbara Co.,* 93 Cal. 300, 314, [28 Pac. 1049]; *Burnett* v. *Lyford,* 93 Cal. 114, 117, [28 Pac. 855]; *Mills* v. *Boyle Mining Co.,* 132 Cal. 95, 97,

[64 Pac. 122] ; *Keating* v. *Morrissey,* 6 Cal. App. 163, [91 Pac. 677].)

As we have seen, the defendant not only challenges the authority of Elliott, as manager, to make the note in question, but denies his right as such manager to render the stated account upon which the note was executed and delivered to Stevens & Son, and, moreover, denies that the liability upon the transaction as to which the account was stated and the note given existed against the defendant. The claim is, in other words, that the obligation or debt for which the note was given was not the obligation or debt of the defendant but that of Selma Fruit Company—the old corporation. The purpose of the proof addressed to this point was to show, of course, that the note was given without a consideration.

But we think that the evidence very plainly discloses that the defendant, by agreement, not only absorbed the old corporation, Selma Fruit Company, including all its property, but assumed the fulfillment of all its uncompleted contracts and the satisfaction of all its outstanding obligations, including the transaction upon which this action is founded.

The facts as to the formation of the new corporation and the arrangement with the old company have already been told in a general way, and are undisputed. The question upon which the parties differ is as to the intention or scope and effect of the understanding and arrangement of said parties in the premises as evidenced by the written agreement between the committee, appointed from the subscribers to the capital stock of the proposed new corporation to prepare for the formation of the latter, and the old corporation.

This agreement is not in obscure or doubtful language, and clearly exhibits, we think, the extent to which it was intended that the new corporation was to be bound in the matter of the burdens and contracts of the corporation to whose business and properties it succeeded.

After explaining that Selma Fruit Company and T. H. Elliott agreed to "sell to certain parties four certain patent applications of T. H. Elliott, and lots, packing-houses, machinery, etc., and the goodwill of Selma Fruit Company," all packing material and supplies on hand and all contracts for supplies in connection with *said business,* and contracts for the purchase of about one hundred tons of raisins, etc., and

that said company was instructed to make arrangements "to immediately take over *the business* of the Selma Fruit Company," etc., said agreement provides *inter alia:* " . . . That the *business of said Selma Fruit Company,* etc., . . . shall be continued by said Selma Fruit Company, *under its present organization,* commencing Aug. 1st, 1908, *for and on behalf of said corporation so to be formed by said committee.* Said Selma Fruit Company *shall continue to operate said business until said new corporation ·shall be formally organized and shall by formal resolution take over the operating of said business for its own account."*

It appears to us that nothing could be clearer than that, by the foregoing language of said agreement, it was intended and understood that the proposed new corporation, the specific and avowed purpose of which was to succeed to the *business* of the old company, should not only take over all the properties of the old corporation but assume all its obligations and contracts. The fact that the old corporation was authorized and empowered to proceed with the transaction of the business in which it was and had been engaged *for and on behalf of the proposed new corporation* and to so continue *"until said new corporation shall be formally organized and shall by formal resolution take over the operating of said business for its own account,"* leaves open no other construction of the scope of the agreement. And, as if to emphasize the intention as thus gathered, the agreement proceeds: "All business contracted on and after August 1st, 1908 (the date of the agreement), *shall be subject to the consideration and approval of the parties of the second part."* In other words, all business for which contracts had been made by the old company prior to the execution of the agreement is not subject to the consideration and approval of the committee (parties of the second part), since such contracts have already been considered, approved and accepted and the company has bound itself to carry them out; while that business for which contracts may be made subsequently to the making of the agreement must first be approved by said committee, since after that date the operation of the business of Selma Fruit Company by the latter is not for and on account of said company, but for and on account of its proposed successor, the defendant herein.

In short, the transaction from which this action arises was pending and existed as and involved one of the obligations of the old company at the time of the execution of the agreement referred to. The old company was in that transaction acting as a broker for the copartnership. The raisins were in the possession of the old company at the time of the making of said agreement, and an offer to purchase the raisins had been made and accepted. Now, even if it may be said that it is not clear from the language of the agreement itself that the defendant intended to assume, and did in fact assume, the relation to Stevens & Son, as to the raisins involved in the transaction, which was sustained to the copartnership by the predecessor of the defendant, we think that such relation is nevertheless clearly and conclusively established by the fact that the defendant, *after* it was formed and organized and took over all the properties and the business of the old company, shipped the raisins of Stevens & Son to the Chicago buyer and received the money from said buyer in payment thereof.

Moreover, no question was raised by the defendant of the relation it sustained to the copartnership at the time the account between it and Stevens & Son was stated and its note given as evidence of the amount ascertained to be due on said account. The president knew of the circumstance of the rendering of the account by Elliott in his capacity as manager, knew that, in lieu of turning over the money received for the raisins to Stevens & Son, Elliott made and delivered to them the note of the defendant for the amount so received, and indeed, as seen, subsequently recognized and ratified the manager's action in the matter as the action of the defendant by ordering the note to be paid.

No ground, it seems to us, exists for doubting that the findings are amply supported, and much less can it be doubted that the judgment is absolutely just. Indeed, the complaint, so far as the cause of action on the promissory note is concerned, could and should be sustained solely upon the theory that the defendant borrowed from Stevens & Son the money for which the note in question was given, and without regard to the question whether the money so borrowed constituted the proceeds of a sale of the raisins or whether said raisins were sold either by Selma Fruit Company or by the defendant.

It cannot be doubted that Elliott, either as an individual or as the agent of the defendant, received the sum of money specified in the note for Stevens & Son on account of the sale of the latter's raisins. He declared that the money was forwarded by the purchaser of the raisins to the defendant and that the latter received said money for Stevens & Son. But, however that may be, there is one very important and vital fact which appears to be unquestionably established by his testimony (and upon this point he is not contradicted), and that is that when Stevens & Son demanded a settlement and the sum of money due the copartnership was determined, he (Elliott), acting in his capacity as manager of the defendant, asked them to take the corporation's note for the amount for the term of one hundred days, saying that the defendant needed the use of the money. Stevens & Son consented to the proposition and accepted the note. It is not disputed that the corporation needed the money and used it for its purposes. To the contrary, the only evidence in the record addressed to that point discloses that the corporation did need the money and used it in the course of its business operations. Now, conceding that the defendant did not act for Stevens & Son in the handling and sale of their raisins and that it did not receive the money from Stevens & Son from the purchaser of the raisins, but that Selma Fruit Company conducted the transaction, and that Elliott, as an individual, received the money after the absorption of the old company by the defendant, and yet no one will have the temerity to gainsay the very obvious proposition that, having borrowed the money and executed its promissory note as evidence of the liability or obligation, the defendant must be held for the extinguishment of such obligation. In such case, the question whether the defendant acted as broker for Stevens & Son in the sale of the raisins would, manifestly, be immaterial.

The contention that plaintiff is not owner of the account and note is without merit. Both plaintiff and his son, R. E. Stevens, testified that they constituted the copartnership of E. M. Stevens & Son, and that R. E. Stevens, prior to the commencement of this action, assigned and transferred to his father, the plaintiff, all his interest in the account and note in question. It is argued, however, that, in order to vest the sole ownership of account and note in the plaintiff, it was neces-

sary that the assignment should have been made by the copartnership. We know of no rule or reason against the right of one partner to assign his interest in the copartnership or in the property or contracts of the copartnership to another partner.

We have not attempted to notice all the points, of which there is a great variety, urged by the appellant against the decision of this controversy. Nor have we followed, or deemed it necessary to follow, the ramifications of the ingenious arguments offered in support of those points. We conceive it to be enough to say that neither the points nor the arguments, the latter monuments to the genius and zeal of counsel, have appealed to us as possessing sufficient force to molest in the slightest measure a judgment that plainly appears to our minds to be not only just but in all respects legally impregnable.

The judgment and order are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.