[S. F. No. 7523.   In Bank.—February 18, 1918.]

NELLIE M. WALKER, as Administratrix, etc., Respondent,
v. SELMA FRUIT COMPANY, INC. (a Corporation),
Appellant.

CONTRACT—CONSTRUCTION OF—NONASSUMPTION OF CORPORATE LIABILITY.
A written agreement between a corporation and a committee of
subordinates to the capital stock of a corporation proposed to be
organized, for the sale of property and the business of the former
to the latter, construed, and held that same did not import any
assumption by the new company of liability on account of a particular indebtedness of the old company.

APPEAL from a judgment of the Superior Court of
Fresno County.   Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Harris & Hayhurst, and L. L. Cory, for Appellant.

Everts & Ewing, and Charles R. Holton, for Respondent.

ANGELLOTTI, C. J.—In May, 1907, plaintiff's intestate
entered into a contract of sale with the Selma Fruit Company, a corporation, covering his raisin crop for that year
on twenty acres in Fresno County, the same to be delivered
to the company not later than December 1, 1907.   The raisins
were delivered to said company during that year.   On August
1, 1908, there was a balance of $3,005.51 due Mr. Walker
from the Selma Fruit Company for these raisins, an account
being then stated between them.   In 1911 plaintiff brought
and maintained to judgment an action for this balance against
the Selma Fruit Company and its directors as trustees, the
charter of the corporation having been forfeited for failure
to pay its license tax.   The judgment being entirely unsatisfied, plaintiff subsequently brought this action thereon against
the Selma Fruit Company, Inc., a new corporation organized
subsequent to August 1, 1908, to which had been transferred
the business of the Selma Fruit Company.   Judgment was
given in her favor against this new corporation for the full
amount of the claim with interest.   The defendant appeals
from such judgment.

This judgment can be sustained only on the theory that by a written agreement of August 1, 1908, between the Selma Fruit Company, and T. H. Elliott, on the one hand, and a committee of subscribers of the capital stock of a corporation then proposed to be organized (which it may be conceded was this defendant), on the other, the new corporation, through this committee, assumed the obligation of satisfying all the obligations of the Selma Fruit Company existing on that date. The complaint was framed and the action was tried solely on this theory, and there is nothing in the evidence adduced on the trial that would support the judgment on any other theory. Passing then all other points made by appellant, we take up the question of the proper construction of this agreement.

From its recitals this agreement appears to be supplemental to a previous agreement dated June 17, 1908, for the sale by the Selma Fruit Company and T. H. Elliott, of certain patent applications of Elliott, and "fourteen lots with the packing houses, machinery, brands, etc., of the Selma Fruit Company, all packing material and supplies on hand and all contracts for supplies in connection with said business, and contracts for the purchase of about one hundred tons of raisins." It further recites the appointment of the committee by the subscribers of the proposed new corporation to make arrangements to immediately take over the business of the Selma Fruit Company and the use of the machinery covered by the patent applications.

It then provides substantially as follows:

The business of the Selma Fruit Company and the use of the premises and machinery shall be continued by the Selma Fruit Company, commencing August 1, 1908, "for and on behalf of said corporation so to be formed by said committee . . . until said new corporation shall be formally organized and shall by formal resolution take over the operating of said business for its own account."

"All the contracts made by said Selma Fruit Company for the delivery of dried fruit and raisins by growers on and after Aug. 1st, 1908, and all contracts made by said company for the sale of dried fruits or raisins, for delivery after August 1st, 1908, shall be carried out by said Selma Fruit Company for and on behalf of said new corporation."

"All expenses accrued and accruing on business maturing after August 1st, 1908, in connection with said business and all obligations and profits in connection with said business after said date shall be accounted for to said new corporation."

"Any expenses incurred by said Selma Fruit Company previous to August 1st, 1908, in developing the markets and corresponding with brokers and dealers in regard to contracts for business maturing subsequent to August 1st, 1908, and unearned insurance premiums subsequent to said date shall be paid for by said new corporation, subject to an accounting to be had later on."

"All business contracted on or after August 1st, 1908, shall be subject to the consideration and approval of the parties of the second part hereto."

"It is understood that said Selma Fruit Company shall have the privilege of using the facilities of the house to finish the processing, seeding, packing and shipping of the raisins heretofore bought by them and now on hand, subject to cost of labor and materials used to be paid by them."

Provision is then made for an accounting to the new corporation of all expenses and profits of the operation of the business under the agreement, and it is also provided that if the new corporation is not formed, or if it fails to provide within a reasonable time for the taking over of the property transferred "according to this agreement and the agreement of June 17th, 1908, and its modifications and extensions" all such property "shall revert" to the Selma Fruit Company and Elliott. It is declared that an inventory "of the packing material and supplies on hand" which are to be transferred under the terms of said agreement is attached, but this inventory was not shown by the evidence.

We are unable to see in this anything importing an assumption on the part of the purchaser—the proposed new corporation, of any liability of the Selma Fruit Company on account of raisins actually purchased by and delivered to said company prior to August 1, 1908. Of course, it is apparent from this instrument that the new company was purchasing from the vendors the plant, machinery, goodwill, trademarks, patent rights, "packing material and supplies on hand and all contracts for supplies in connection with such business," together with some contracts for the purchase of

about one hundred tons of raisins, all with a view to taking over and thenceforth carrying on the business theretofore carried on by the Selma Fruit Company, but this implies no transfer of debts due the company on business already done, or the assumption of debts due from the company on account of such business. It does not even appear that any transfer of raisins or dried fruit already bought by and delivered to the company was contemplated. In this connection respondent relies on the words in the recitals "all packing material and *supplies* on hand and all contracts for *supplies* in connection with said business," but manifestly the word "supplies" as here used (unless the inventory referred to shows otherwise), should not be held to include raisins and dried fruit bought and on hand. Raisins and contracts for the purchase and delivery of raisins are so specifically provided for as to make such a construction unreasonable, in the present condition of the record at least. The specific provision that the Selma Fruit Company shall have the privilege of using the facilities of the house to finish the processing, seeding, packing and shipping "of the raisins heretofore bought by them and now on hand," paying the cost of labor and materials used therein, indicates clearly enough that there was no transfer of the stock of raisins actually owned and possessed by the company. The provision that the new company will pay expenses incurred by the Selma Fruit Company previous to August 1, 1908, "in developing the markets and corresponding with brokers and dealers in regard to contracts for business maturing subsequent to August 1st, 1908, and unearned insurance premiums subsequent to said date" clearly indicates absence of any intent that debts accrued prior to August 1st, and not specially provided for by the agreement, were to be assumed by the purchaser. The agreement shows very clearly the intention that the contracts for the delivery of fruit or raisins by growers in which the new company was to have any concern were those only in which the delivery was undertaken for or after August 1, 1908. The plain idea was that the transfer of the business was to be practically as of that date, and that inasmuch as the new corporation had not then been created, the Selma Fruit Company was to continue to operate the business for the new corporation until its organization, accounting to the new corporation for "all expenses accrued

and accruing *on business maturing after August 1st, 1908,* in connection with said business and all obligations and profits in connection with said business after said date.'' As to "business maturing" prior to August 1, 1908, as was the situation with reference to the transaction here involved, it is plain that there was no intent that the purchaser should acquire any right or assume any obligation.

Certain expressions in the opinion of the district court of appeal of the third appellate district in *Stevens* v. *Selma Fruit Co., Inc.,* 18 Cal. App. 242, [123 Pac. 212], are not in accord with our conclusion. That case differed very materially in its facts from the case at bar, and in so far as the opinion states that by the language of the agreement (which was the very agreement here involved) the intention was that the purchaser should take over *all* the properties of the Selma Fruit Company and assume *all* its obligations, we think the views expressed were entirely unnecessary to a decision of the case. We have no disposition to question the correctness of the decision in that case, but we cannot concur in the expressions in the opinion to which we have specially referred.

The judgment is reversed.

Sloss, J., Victor E. Shaw, J., *pro tem.,* Shaw, J., Melvin, J., and Wilbur, J., concurred.