[Civ. No. 6312. First Appellate District, Division Two.—September 14, 1928.]

L. G. ROWELL, Respondent, v. WESTERN MOTOR TRANSPORT COMPANY (a Corporation) et al., Defendants; CALIFORNIA TRANSIT COMPANY (a Corporation), Appellant.

Earl A. Bagby for Appellant.

Frank J. Blake for Respondent.

BUCK (G. F.), P. J., *pro tem.*—This is an action to recover damages alleged to have been sustained by plaintiff by reason of his unlawful discharge prior to the expiration of the terms of his employment.

The employment in question was based upon a contract entered into between plaintiff and defendant, Western Motor Transport Company, which contract and the liability thereon were alleged to have been assumed by the defendant, California Transit Company, who thereafter discharged the plaintiff.

The case was tried before the court without a jury. Neither of the defendants offered any evidence on their own behalf and the case was submitted upon the evidence educed on behalf of the plaintiff. The court thereupon made findings and gave judgment in favor of the plaintiff and against the defendant, California Transit Company, in the sum of $4,500 and in favor of the defendant, Western Motor Transport Company, for its costs. From this judgment the defendant, California Transit Company, alone appeals.

The main ground of the appeal is that the evidence is insufficient to sustain the finding of the court that the appellant assumed the obligations of plaintiff's contract of employment. The contract of employment was for the term of three years from September 15, 1921, at a monthly salary. On the seventh day of the following November the Western Motor Transport Company entered into a written contract with the appellant whereby the first named company sold and delivered to the appellant "all of the property and assets of every kind and nature owned by the seller save and except its franchise as a corporation" upon the condition that the "buyer shall and will pay seller for said property as soon as permitted so to do by order of the California Railroad Commission one thousand shares of the capital stock of the buyer of the par value of $100. each. . . . Buyer hereby assumes and agrees to pay and discharge the liabilities of seller as they existed at the close of business on the 30th day of September, 1921, but not to exceed the sum of $103,500, and further assumes and agrees to pay the liabilities of seller, if any, incurred since said date in the conduct of the business of seller. This agreement shall not be effective until the sale herein provided for and the stock

issue herein agreed to have been approved by the California Railroad Commission.''

Thereafter, on February 8, 1922, after both companies had appeared before the Railroad Commission in pursuance of the statute, such a showing was made that the commission made the following order:

''Western Motor Transport Company, having applied to the Railroad Commission for permission to transfer its operative rights to the California Transit Company, and California Transit Company having asked authority to acquire such operative rights, and to issue $183,500 of common stock, and to assume indebtedness, a public hearing having been held and the Railroad Commission being of the opinion that the money, property or labor to be procured or paid for through the issue of $100,000 of stock, and the assumption of indebtedness in the amount of not exceeding $103,500 is reasonably required by California Transit Company, and that this application should be granted, subject to the conditions of this order.

''It is hereby ordered, that California Transit Company be and it is hereby authorized to issue $100,000 par value of its common stock to Western Motor Transport Company and to assume not exceeding $103,500 of indebtedness of Western Motor Transport Company, all for the purpose of acquiring the properties of the Western Motor Transport described in this application.

''It is hereby further ordered, that this application, in so far as it relates to the issue of $83,500 of stock, be dismissed without prejudice.

''The authority herein granted is subject to further conditions as follows:

''a. The $100,000 of stock which California Transit Company is herein authorized to issue, shall be delivered to Western Motor Transport Company as part payment for the properties, which it is herein authorized to sell to California Transit Company.

''b. Western Motor Transport Company shall within ten days from the effective date of this order file with this Commission a stipulation agreeing not to distribute any of the $100,000 of stock until all claims of creditors have been satisfied.''

This order was accepted and acted upon by both corporations; the seller proceeding to liquidate its business and the buyer continuing to operate with the plaintiff in its service at the same salary as was provided for in his contract until April 1, 1924, when he was discharged without his consent.

▊ Respondent relies upon the well-established principle of equity that though he was not a party to the contract of November 7, between the corporations or expressly mentioned therein or directly referred to, he was nevertheless entitled to be subrogated to the rights of the obligee; and to avoid circuity of action he could bring suit on the contract if he comes within a class of persons expressly intended to be benefited by the appellant's assumption of liability. (Sec. 1559, Civ. Code; 6 Cal. Jur. 469 et seq.)

But the same equity which permits the plaintiff to be subrogated does not require that the obligor whom he is permitted to sue shall be bound to any greater or broader assumption of liability than is justified by the terms of the contract of assumption. This rule was applied in the case of *Walker* v. *Selma Fruit Co., Inc.,* 177 Cal. 525 [171 Pac. 309]. See, also, *Sherwood* v. *Gill,* 36 Cal. App. 707 [173 Pac. 171]. Also, as in the case of any other contract, the meaning of any of the terms of the contract of assumption, if doubtful or ambiguous, may be explained by extrinsic evidence.

▊ At the outstart it should be noted that the contract of November 7th herein does not, like many of the cases relied upon by the respondent, expressly state that the purchaser assumes "all of the debts and liabilities of the seller."

On the contrary, in the case at bar, the purchaser agreed only to assume "the liabilities of the seller as they existed at the close of business on the 30th day of September, 1921, but not to exceed $103,500."

It is therefore evident, both as regards the identity of, as well as the class of liabilities intended to be assumed, that the above description is doubtful until its meaning can be made certain by some proper rule of interpretation. As stated in volume 6, California Jurisprudence, at page 304, with numerous citations: "It is well recognized that the terms of a contract may be manifested by conduct when not

stated in words. And where the meaning is doubtful the acts of the parties done under a contract afford one of the most reliable means of arriving at their intention. The law recognizes the practical construction of a contract as the best evidence of what was intended by the provisions. 'Contemporaneous exposition is in general the best.' ''

The first ''acts of the parties done under the contract'' of November 7th were in obvious pursuance of the provision of the contract that it be approved by the Railroad Commission. For in order to provide the commission with evidence upon which it could base its approval, it appears from the proceedings introduced in evidence that ''The Western Motor Transport Company reports its assets and liabilities as of September 30, 1921.'' And the commission accordingly finds that ''Its liabilities of the same date, payment of which will be assumed by the California Transit Company, are reported to aggregate $102,498.85. The record showing, however, that certain other liabilities exist which do not appear on the company's balance sheet.''

Now, in referring to the balance sheet just mentioned it appears that the aggregate of $102,498.85 ''which will be assumed by the California Transit Company'' is made up exclusively of current liabilities actually payable as of September 30, 1921, and does not include any contingent liabilities of the class or kind represented by plaintiff's contract of employment. The final order of the commission set forth above approving ''the assumption of liabilities not in excess of $103,500'' is obviously based upon the above finding of liabilities in the sum of $102,498.85 as identified, plus ''other liabilities'' not shown in the balance sheet but—under the rule *ejusdem generis*—of the same class of liabilities as the identified $102,498.85.

And the final conduct of the parties in accepting and acting with full knowledge upon the above order as made would further indicate that the parties were placing a like construction upon the language of the order when it classified the liabilities to be assumed as above.

In the absence of fraud, which is not attempted to be alleged, or proven, or found in this case, we cannot substitute for the intention of the parties as above expressed some other or broader intent which counsel may argue the parties should have had but did not express.

█  Counsel also contends that irrespective of the contract of November 7, 1921, the money judgment herein should be sustained because, as he states, "the established doctrine of the law is that when one corporation takes over all the assets of another corporation, the continuing corporation, irrespective of the existence or absence of an express agreement, must also shoulder all the liabilities of the transferor, nor can any agreement tending to limit those liabilities or exclude any of them affect the rights of any obligee of the transferring corporation." This doctrine, with its necessary and proper limitations, is illustrated in the cases cited by counsel. See, also, very full annotations in 11 L. R. A. (N. S.) 1119, and 15 A. L. R. 1114. The reason of the rule as generally stated is that the assets of a corporation constitute a trust fund for the benefit of the creditors which may not, through either actual or constructive fraud, be fraudulently diverted to the detriment of the creditors. But in the case at bar there are no findings, either made or justified by the evidence, which would bring this case within the rule relied upon by counsel so as to sustain the money judgment entered herein.

In the first place, it is not shown that the company transferring its assets had, prior to or at the time of the transfer, or at all, breached plaintiff's contract. Nor is it shown that the consideration for the transfer was diverted from the transferring corporation unlawfully or at all to its stockholders. Both these circumstances were made to appear in the complaint sustained in the case of *Schaake* v. *Eagle etc. Co.*, 135 Cal. 472 [63 Pac. 1025, 67 Pac. 759], relied upon by counsel. Nor is there any allegation of actual fraud or any sufficient showing of constructive fraud. For there is no showing of any lack of consideration actually received by the transferring company, or that such company is insolvent, or that the company was left without assets, or that the transferee corporation was simply a reorganization of the old company under a new name with practically the same assets, stockholders and directors as appeared in the other California cases relied upon by counsel, all of which are cited or referred to in the later case of *Stanford Hotel* v. *M. Schwind Co.*, 180 Cal. 348, at page 354 [181 Pac. 780 783].

The judgment is, therefore, reversed.

Nourse, J., and Sturtevant, J., concurred.