[Civ. No. 4271. Third Appellate District.—April 14, 1931.]

C. G. IMES, Respondent, v. E. A. MacDONALD et al., Appellants.

Dean Edgerton for Appellants.

Michael Rudolph and Pacht, Pelton & Warne for Respondent.

MR. JUSTICE Pro Tem. TUTTLE Delivered the Opinion of the Court.—This is an action on a written contract. Judgment was entered in favor of plaintiff for the sum of $2,500, and defendants appeal therefrom.

The only grounds urged for a reversal are that the findings of fact are not supported by the evidence.

The complaint alleges that plaintiff's assignors, O. B. Hall and Ann Elizabeth Hall, entered into a contract whereby defendants agreed to convey unto said assignors, within six months, a certain parcel of real property. Time is made of the essence of said agreement, and the same further provides that in the event defendants should not deliver a proper and marketable title and certificate of title showing the title to be such, then defendants agreed to pay said assignors the sum of $2,250. It is further alleged that defendants failed to convey said land to assignors, and that the said sum is now due, owing and unpaid.

The answer denies, among other things, that defendants did not perform the covenants on their part to be performed, and also sets up a special defense of waiver of title, estoppel of plaintiff to deny performance of the contract, ratification and confirmation of delivery of defendants' deed, and performance of the contract upon the part of defendants.

The court found for plaintiff upon all issues. It also found specially that the assignors duly performed all of the conditions of said contract on their part to be done and performed. The latter finding is not questioned by appellant, most of his attack being centered upon a portion of finding III, which reads as follows:

"That said defendants failed and refused to convey unto the said O. B. Hall and Ann Elizabeth Hall said land and premises hereinbefore described pursuant to the terms and conditions of the said contract, or at all, and that there then became due to the said O. B. and Ann Elizabeth Hall under and pursuant to the terms of said contract hereinbefore referred to the sum of $2,250.00, and that said O. B. and Ann Elizabeth Hall duly demanded payment of said sum and amount from said defendants, but that they have

failed and refused and still fail and refuse to pay the same or any part thereof, and that the whole sum of $2250.00, together with interest thereon at the rate of 7% per annum from the 22nd day of October, 1927, remains wholly due, owing and unpaid.''

The court also found that defendants did not perform their part of the contract to be performed by them; that there was no delivery of appellants' deed; that there was no estoppel, no ratification or confirmation of delivery of the deed upon the part of the assignors, and no waiver of title. It is contended that the foregoing findings are not supported by the evidence.

The contract which forms the basis of this action was one for the exchange of real property. Pursuant to the terms of the agreement, the assignors conveyed to defendants the title to certain real property in Los Angeles County, and defendants took possession of the same. In consideration of the conveyance of the Los Angeles property to them, defendants agreed to perform the following acts (in the language of the contract) : ''but the sellers (defendants herein), on receiving the full consideration in the manner above mentioned, agree to deliver a certificate of title showing the title to be vested in O. B. Hall and Ann Elizabeth Hall, husband and wife, as joint tenants, and to execute and deliver to the buyers (assignors of plaintiff) or their assigns, a good and sufficient deed of grant, bargain and sale''.

In addition to executing the formal contract of exchange, the parties signed escrow instructions, which provided that a bank should act as escrowee. These instructions followed the terms of the contract. The pertinent portions are in the following language:

''Each party will also deposit in escrow: 1. Mortgagee's, beneficiary's and rental statements pertaining to the property he conveys. 2. All his fire insurance policies, viz.: $ None on Parcel I, also known as Riverside property and $2250.00 on Parcel II, known as 8101 Morton Avenue, which you are authorized to assign. 3. All instruments required to perfect his own title. You are authorized and instructed to disburse and deliver all of the above, when instruments have been filed for record entitling you to procure assurances of title in the form of an agreement on Parcel I and

a continuation guarantee of title of Title Insurance & Trust Co. on $4000, liability on Parcel II, with liabilities limited to the respective appraisal values above expressed, written for the benefit of the respective owners and all incumbrances, showing record title to each Parcel vested in the respective grantee above named, free of incumbrances except for taxes for the fiscal year 1927–1928, including personal property taxes of present or former owner, if any, for the current fiscal year, any and all taxes and assessments levied or assessed subsequent to date of these instructions, conditions, restrictions, reservations, rights, rights of way and easements now of record, if any, and . . . ''

The record shows that each party deposited his deed with the escrow-holder. The latter then delivered the deeds to the grantees. It is conceded by both parties to this litigation, that the bank breached the terms of the escrow agreement, in that it had not then received the certificate of title covering the property of the defendants, showing a clear title. The deed from defendants was delivered to the assignors on September 15th. On October 27th following, the certificate of title was delivered to the assignors. It is conceded that this certificate did not show a marketable title. Upon receipt of the certificate of title, the assignors immediately wrote the defendants to the effect that the title was defective, and the deed from defendants was returned in the letter. Demand was also made for the payment of the sum of $2,250, under the terms of the contract. The contract was dated April 21, 1927, and it provided that:

''In the event that the above sellers for any reason cannot deliver deed to the said buyer herein within a period of six (6) months from date hereof, the said buyers agree to accept, and the said sellers agree to pay the said buyers the certain stipulated sum of $2,250, on or before the maturity of the said six months' period.''

It clearly appears that appellants did not carry out the terms of the contract. They contend, however, that by accepting the deed the assignors are estopped from relying upon the breach on the part of defendants. ''The doctrine of estoppel requires of a party consistency conduct, when inconsistency would work substantial injury to the other party. To render the rule operative, it is essential that the party invoking the estoppel was misled by the acts or

conduct of the party against whom the estoppel is claimed; that he changed his position in reliance thereon and was justified in so doing, and that he was prejudiced thereby." (21 C. J. 1204, 1205.)

There is no merit to this defense. How can it be said that defendants were misled when assignors retained the deed? If they relied upon the acceptance of the deed as an absolute delivery, why did their agent, the bank, afterward deliver the certificate of title to assignors? There is absolutely no evidence that defendants were injured by relying upon the acts of the assignors, neither did defendants change their position in reliance upon the conduct of the assignors. Defendants well knew at all times that they were obligated to deliver the certificate of title as well as the deed.

The time for the delivery of the deed by appellants expired September 20th. The deed was returned October 28th. It is argued that by returning the deed after the expiration of the time fixed, grantees waived the clause which stated that time was of the essence of the contract.

As the trial court found, there is no evidence of any waiver upon the part of the assignors. The cases relied upon by appellants all contain facts which would justify the court in finding a waiver. For illustration, in the case of *Tuffin* v. *Warfield*, 72 Cal. App. 282 [237 Pac. 64], the vendees entered into possession of the real property and cultivated and improved it. No facts of similar import appear in this record.

It is finally contended by appellants that there was an absolute delivery of this deed and that "by the delivery and acceptance of the deed one of the fundamental elements of an escrow was destroyed, i. e., possession of the deed by a third person until the condition had been performed". Whether or not the escrow was destroyed is of little consequence, as the contract of exchange obligated appellants not only to deliver the deed, but also the certificate of title. The bank failed to follow the instructions, in that they delivered the deed before they had the certificate in their possession. They had absolutely no right to deliver the deed until they had the certificate of title before them showing the title to be good and marketable. The delinquency of the bank may have been of no consequence if the cer-

tificate, though delivered later, had shown a good title. "To constitute a delivery of a deed there must not only be delivery by the grantor, but an *acceptance* by the grantee." (*Bank of Healdsburg* v. *Bailhache*, 65 Cal. 327 [4 Pac 106, 108].) In that case the court went on to state that the minds of the parties had never met upon the execution and delivery of the deed. The facts here show, at the most, a conditional acceptance. "There is only a conditional acceptance where the purchaser at the time of the execution and delivery of the contract receives a deed, not with the intention of having title vest at that time, but with the intention of retaining the deed and having title vest if the abstract of title shows a merchantable title." (18 C. J. 214, sec. 123.) And so here, the trial court acted upon sufficient evidence when it found that there had been no delivery of the deed from appellants.

The action is not one to enforce a forfeiture or recover a penalty. Appellants actually took title to the property of assignors, and then refused to part with any consideration whatever. The sum of $2,250 was simply an alternative consideration. Appellants admit their inability to convey their real property with a good title, and it is only just that they should be compelled to pay the stipulated sum as required by the contract.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 14, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 11, 1931.