[S. F. No. 6008. In Bank.—February 10, 1915.]

GEORGE R. RAY, Appellant, v. CHRISTIAN J. BORG-FELDT and WILLIAM H. BORGFELDT, Respondents.

SURETY ON NOTE—LOAN TO MAKER CONSIDERATION FOR AGREEMENT OF SURETY—FAILURE OF CONSIDERATION—PAROL AGREEMENT RESPECTING APPLICATION OF PAYMENTS.—The loan of money for which a promissory note is given is a valuable and adequate consideration for a contemporaneous agreement by sureties on the note that the same would be paid; and the failure of the payee of the note to comply with the terms of an oral agreement entered into by all parties to the note at the time of its execution, by which it promised to apply moneys received by it for account of the maker to the payment of the note in preference to other indebtednesses due it from the maker does not constitute a failure of consideration for the undertaking of the sureties.

ID. — ACTION AGAINST SURETIES — EVIDENCE — CONTEMPORANEOUS ORAL
AGREEMENT FOR ORDER OF APPLICATION OF PAYMENTS — DIRECTIONS
BY DEBTOR TO CREDITOR.—In an action against sureties on a promis-
sory note, evidence is admissible of an oral agreement between the
payee and the maker and sureties entered into at the time of the
execution of the note, by the terms of which the payee promised to
apply any moneys received by it for account of the maker to the
extinction of the note in preference to applying such moneys to the
payment of other obligations due from the maker to the payee.
Such evidence is admissible as in proof of a direction by a debtor
to his creditors respecting the order for the application of payments,
within the purview of section 1479 of the Civil Code, and does not
have the effect to alter or vary by parol the written contract evi-
denced by the note.

ID.—FAILURE OF PAYEE TO APPLY PAYMENTS AS DIRECTED BY MAKER—
VIOLATION OF RIGHTS OF SURETIES.—The failure of the payee to so
apply moneys received by it for the account of the maker, was a
violation of the rights of the sureties under the terms of section 1479
of the Civil Code.

ID.—DIRECTIONS FOR ORDER OF APPLICATION OF PAYMENTS, HOW MADE
—TIME FOR GIVING DIRECTIONS.—In order that a debtor, under sev-
eral obligations to his creditor, may exact compliance with and thus
receive the benefit of the provisions of section 1479 of the Civil
Code determining the order of the application of payments, it is not
necessary that he should, at the precise time of performance, direct
the application of any payments made by him toward the extinction
of a particular obligation. All that the section requires is that the
creditor, at the time of performance or payment, must be in posses-
sion of knowledge, obtained from the debtor, of the intention or
desire of the latter that the payment shall be applied to the satis-
faction of a particular obligation. The time, in respect to the date
of performance or payment, at which such knowledge is so obtained,
whether it be at the precise time of performance or at some prior
time, is wholly immaterial.

ID.—DEBTOR MAY CHANGE DIRECTIONS PREVIOUSLY GIVEN.—The debtor,
at the time of performance, may make a different direction as to
the application of payments, but unless he does so, the original
direction must govern the creditor in the application of the moneys
paid.

ID. — FORM OF DIRECTIONS BY DEBTOR — DIRECTIONS MAY BE BY PAROL
AND AT ANY TIME.—The communication to the creditor by the
debtor of the latter's intention or desire to apply the payments
toward the extinction of a particular obligation need not be ex-
pressed in writing, or in any technical or formal words, or delivered
in any particular manner. It is sufficient that the intention is
manifest, and that it comes to the knowledge of the creditor. It
follows, that the communication may be shown by parol, whether

made at the time of performance or at the time when the obligation as to which the direction was intended to operate was created and its terms committed to writing, or at any time between the date of the making of the obligation and that of payments to the payee.

ID.—EVIDENCE—DIRECTION GIVEN BY AGENT OF DEBTOR.—The evidence in this case is held sufficient to show that the principal debtor and maker of the note, through its agent duly authorized in that behalf, was a party to the making of the oral agreement and direction respecting the application of the moneys received by the payee for its account.

ID.—AUTHORITY OF PRESIDENT OF CORPORATION TO DIRECT ORDER OF PAYMENTS.—The authority of the agent of the maker of the note to enter into such parol agreement and to give such directions for the application of payments by the payee may be inferred from the facts that the maker of the note was a corporation, and that the agent was its president and manager, and had attended to and managed all its affairs both before and after the execution of the note.

ID.—IRRELEVANT TESTIMONY BROUGHT OUT BY PARTY SUBSEQUENTLY OBJECTING.—If the plaintiff, on the trial of such action, during the cross-examination of a witness for the defendant, brings out irrelevant testimony injurious to itself, it is not prejudiced by questions subsequently asked by the defendant of the witness along the same line of inquiry, which assumed as true the facts brought out by the plaintiff.

ID.—CASE TRIED ON WRONG THEORY—CORRECT JUDGMENT ACCORDING TO LAW AND FACTS.—A judgment in such action, rendered in favor of the defendant sureties upon a verdict of the jury in their favor, will not be reversed on appeal, merely because the lower court tried the case upon the erroneous theory that the sole consideration which moved the defendants to become sureties to the note was such oral agreement, and gave an instruction based upon such theory which misstated the law in that particular, where the answer specifically set up a breach of such oral agreement as a defense, and the evidence without conflict established the facts of the loan of the money represented by the note, the signing of the notes by the sureties, and the receipt by the payee for account of the maker of sufficient money to pay the note if applied according to the wishes of the defendants, and the court by its instructions left with the jury the duty to determine whether or not there had been a direction for the payment of the note in the order for which the defendants contended.

ID.—AGREEMENT RELATIVE TO ORDER OF PAYMENT BETWEEN PAYEE AND SURETY—INSTRUCTION NOT MISLEADING.—In an action on such note against the sureties alone, while no agreement relative to the order of payment between the payee of the note and the sureties, without the concurrence of the maker, would bring the facts of the case under the provisions of section 1479 of the Civil Code, still an in-

struction which erroneously refers to such an agreement as one between the "defendants" and the payee, will not be deemed misleading, where all the proof was directed to an agreement between the payee and all of the parties to the note relative to the order of payment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, for Appellant.

Edward A. O'Brien, and Hillyer, Stringham & O'Brien, for Respondents.

MELVIN, J.—This case was originally decided on appeal by the district court of the third district and the following opinion, prepared by Mr. Justice Hart, was filed:

"This action, brought to recover on two promissory notes, was tried before a jury and a verdict returned in favor of the defendants. The plaintiff has appealed from the judgment thereupon entered in favor of the defendants and from the order denying his motion for a new trial.

"The notes in suit were made in favor of the Banca Svizzera Americana of Locarno (commonly called and known as the Swiss American Bank) by F. Cavagnaro Company, C. J. Borgfeldt & Co. and Hilbert Mercantile Company, and were assigned by said bank to the plaintiff. One of the notes was for the sum of five hundred dollars, is dated January 15, 1906, and made payable four months after its date. The other is for the sum of $4,884.18, is dated January 30, 1906, and payable four months after its date. The notes were in the ordinary form and the makers thereof bound themselves thereon both jointly and severally."

"The notes in controversy were executed under the following circumstances, quoting from an admittedly correct statement of the facts in the opening brief of counsel for the plaintiff:

"The F. Cavagnaro Company, one of the makers of the notes, in the month of January, 1906, and before the execution of the notes, was insolvent. An agreement was entered into by and between the F. Cavagnaro Company and its creditors,

among whom was the Banca Svizzera Americana of Locarno, commonly called the Swiss-American Bank, by the terms of which the creditors agreed to accept 35 per cent of their respective claims in cash in full satisfaction. The F. Cavagnaro Company, however, lacked $5,384.18 of having enough money to carry out the agreement. Application was made to the Swiss-American Bank for a loan of that sum, the F. Cavagnaro Company offering its notes in return. The bank, however, refused to loan the money on the notes of the F. Cavagnaro Company alone, but demanded that financially reliable persons be procured to go on the notes with the F. Cavagnaro Company. Thereupon the F. Cavagnaro Company, the Hilbert Mercantile Company, and the defendants executed as makers and delivered to the bank the notes and the bank paid $5,384.18 in cash to the F. Cavagnaro Company, which the latter applied in settling the claims of its creditors in accordance with its agreement.

"The defendants at the time the notes were given were partners doing business under the firm name of 'C. J. Borgfeldt & Co.'

"The complaint contains allegations showing the making and delivering of the notes by the defendants and the other makers to the bank and the assignment of the notes to the plaintiff. After deducting all part payments made by various makers at various times, the amount still due is alleged to be $3,891.86 and interest."

"The defendants admit the due execution of the notes, but claim that they were paid in full. This claim is based upon an alleged oral agreement had between the parties contemporaneously with the execution of the notes, whereby, so it is insisted, the bank agreed to apply to the payment of said notes, after first satisfying a certain note for $4,780.94, mentioned in the answer, all moneys received by it from Cavagnaro & Company in preference to the satisfaction, by means of the moneys so received, of other indebtedness due said bank from said Cavagnaro & Co. The oral agreement thus referred to was pleaded in the answer as a special defense, and, as thus the facts relative to said agreement are fully and clearly stated, and, as said agreement constitutes the only ground upon which the defendants seek to avoid the force of the obligations of the notes, it is conceived that a clearer apprehension and understanding of the point thus presented may be obtained by a

reproduction here in its entirety of the special defense as thus set up:

" 'And for a further and separate defense to the first count in plaintiff's complaint contained, defendants allege that at the time of the execution and delivery of the note sued upon in the first count of plaintiff's complaint herein, the plaintiff's assignor agreed that any and all money coming into their hands from F. Cavagnaro Company would be applied to the satisfaction of the said note sued upon in the first count of plaintiff's complaint herein, and the said note sued upon in the second count of plaintiff's complaint herein, after the satisfaction and payment of a certain note in the sum of four thousand seven hundred and eighty, and 90/100 dollars, which was then due and owing from the said F. Cavagnaro Company to the said plaintiff's assignor, and the said plaintiff's assignor at that time agreed that the payment of a certain note in the sum of eighty-seven hundred and fifty dollars due and owing then from the said F. Cavagnaro Company, would be postponed until the payment of the said note sued upon in the first count of plaintiff's complaint, and the said note sued upon in the second count of plaintiff's complaint herein; that subsequent to the execution of the said note sued upon in the first count of plaintiff's complaint herein, and prior to the commencement of this suit, the F. Cavagnaro Company deposited with and delivered over to the plaintiff's assignor certain insurance policies covering the property of the said F. Cavagnaro Company, aggregating in amount, the plaintiff is informed and believes, and therefore alleges, the sum of sixteen thousand dollars; that subsequently, to wit, on or about the 18th day of April, 1906, the property covered by the said insurance policies, delivered to plaintiff's assignor as aforesaid, was destroyed by fire, and defendants are informed and believe, and therefore allege, that the plaintiff's assignor collected and received from the various insurance companies represented by said policies, in payment of the losses sustained upon the property covered by said insurance policies, an amount aggregating the sum of fourteen thousand dollars; that the amount thus obtained by the plaintiff's assignor as aforesaid if applied to the payment of the indebtedness of the said F. Cavagnaro Company to the said plaintiff's assignor in accordance with the agreement as aforesaid to apply all money received from F. Cavagnaro Company to the payment of the

notes sued upon in counts one and two of plaintiff's complaint, after the payment of the one forty-seven hundred and eighty and 94/100 dollar note then due plaintiff's assignor, was ample and sufficient to satisfy the indebtedness due on the note sued upon in the first count of plaintiff's complaint herein."

"It was admitted by the plaintiff that the bank realized from the sale of certain goods belonging to Cavagnaro & Co. the sum of $408.75 and received from the insurance policies referred to in the answer the sum of $12,425.00. The undisputed evidence shows that the money so received was applied by the bank to the satisfaction of two notes of the F. Cavagnaro Company which are not involved in this action, and that, consequently, no part of said money was applied to the payment of either of the notes in controversy.

"The evidence as to the making of the oral agreement discloses that the parties making said agreement were a representative of the defendants, a representative of the Hilbert Mercantile Company, Elwin W. Gates, president and manager of the Cavagnaro Company, and the plaintiff's assignor, the latter having been represented by Mr. Tognazzi, its manager. Thereafter, Mr. Gates had several conversations with a Mr. Brunner, also an official of the bank, having authority to bind it, and to the latter Gates stated that it was the understanding of all the parties and the desire of the makers of the notes that all moneys received by the bank from Cavagnaro & Co. should be applied to the liquidation of the notes in suit, after first so paying the note mentioned in the answer as evidencing an indebtedness to the bank of $4,780.94, which note, as seen, is not involved in this action, so far as the purpose of it is concerned. The evidence shows that the defendants, before signing the notes, declared to the manager of the bank, on the occasion of the making of the oral agreement, that they would refuse to become sureties on the notes unless the proposition there suggested as to the order of the payment of the notes in dispute was assented to by the bank and that thereupon the manager of the latter agreed to said proposition.

"It is in evidence, and, indeed, admitted, that the money received by the bank on account of the insurance policies was first applied to the payment of the $4,780.94 note and the balance remaining applied to the extinction of obligations due

the bank from Cavagnaro & Co. other than those evidenced by the notes declared upon.

"The plaintiff produced proof to sustain his claim that no such oral agreement as the one upon which the defendants wholly rest their resistance to recovery upon the notes in controversy was made or entered into; but, manifestly, the result of this denial of the oral agreement is only to create a conflict in the evidence upon that question, and it follows, therefore, that, as to the fact of the making of the agreement, the conclusion of the jury is conclusive.

"The defendants, in confirmation of the special defense set up and relied upon by them, contend that, agreeably to the terms of the oral agreement, so much of the money paid to the bank on the insurance policies as was remaining after the satisfaction therewith of the $4,780.94 note ought to have been credited upon the notes in suit or applied in payment thereof. The contention is, obviously, the offspring of the theory that the oral agreement referred to amounted, within the contemplation of section 1479 of the Civil Code, to the manifestation to the bank of an intention or desire of the makers of the notes that the money so received should be applied to the extinction of those particular obligations. It is further contended by the defendants that, since they became sureties upon the notes upon the agreement with the bank that the latter would apply the money received by it from Cavagnaro & Co. to the payment of said notes in preference to the settlement with such money of any other indebtedness of Cavagnaro & Co. to it, excepting the note for $4,780.94, there was, by reason of the violation of said agreement by the bank, a failure of consideration for the notes in suit.

"The plaintiff, on the other hand, insists that, to have entitled the makers of the notes in dispute to the benefit of the application of said money to the payment of said notes, by virtue of the provisions of section 1479 of the Civil Code, it was the duty of the makers of the notes, under the terms of said section, to have made known to the bank, at the very time the money was received by or paid to the bank, their intention or desire in that respect, and that there is no evidence of any such intention or desire having been manifested to the bank by the debtors at that time. It is, therefore, argued that the effect of the oral agreement, if enforced, will be to vary or modify the terms of a contract in writing. The further point

is made by the plaintiff that the oral agreement referred to, if made at all, was not between the principal debtor, Cavagnaro & Co., and the creditor, the bank, but between the sureties and the bank, and that such an agreement so made could not in any event, within the meaning of section 1479 of the Civil Code, be treated as a manifestation by the debtor to the bank of an intention or desire that the money received by the bank from the insurance companies should be applied to any particular obligation Cavagnaro & Co. were under to the bank.

"The points thus stated and urged here are tested by exceptions reserved at the trial to the rulings of the court admitting evidence of the parol agreement referred to.

"The argument by counsel for the defendants that the failure of the bank to apply the money received by it on the insurance policies to the payment of the notes in suit constitutes a failure of the consideration moving the defendants to become sureties upon said notes, has made no impression upon us. The defendants and the Hilbert Mercantile Company appear upon the face of the instrument as joint makers with Cavagnaro & Co. The evidence, however, shows them to be indorsers or sureties. In any event, the loan of the money was a valuable and adequate consideration for the agreement by the sureties that the notes would be paid. (*Lompoc Valley Bank* v. *Stephenson,* 156 Cal. 350, [104 Pac. 449].)

"We are of the opinion, however, that the testimony received by the court in proof of the oral agreement was properly admitted as in proof of the direction by the makers of the notes in suit to apply any moneys received by the bank from Cavagnaro & Co. to the extinction of their obligations to the bank as evidenced by said notes.

"Section 1479 of the Civil Code reads, in part, as follows:

" 'Where a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

" '1. If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied.

" '2. If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which

was due to him from the debtor at the time of such performance; except that if similar obligations were due to him both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of [the] debtor."

"We are not inclined to accept the view that, in order to comply with and thus receive the benefit of the provisions of the foregoing section, the debtor, under several obligations to the creditor, must, necessarily, at the precise time of performance, direct the application of any payments made by him toward the extinction of a particular obligation. We are of the opinion, rather, that, in sound reason, all that the statute requires or contemplates is that the creditor, at the time of performance or payment, must be in possession of knowledge, obtained from the debtor, of the intention or desire of the latter that the payment shall be applied to the satisfaction of a particular obligation, and that the time, in respect of the date of performance or payment, at which such knowledge is so obtained—that is to say, whether it be at the precise time of performance or at some prior time—is wholly immaterial. In other words, where the appropriation of payments by the debtor has once been made known to the creditor, the intention or desire of the former as to such appropriation is thus manifested to the creditor when the payments are actually made, and a repetition of such manifestation is not necessary. It is no doubt true that the debtor, at the time of performance, may make a different direction as to the application of payments, but unless he does so, the original direction must govern the creditor in the application of the moneys paid. This view of the section under consideration harmonizes with the expressions of our supreme court upon the subject in some early cases.

"In *Wendt* v. *Ross*, 33 Cal. 650, 657, the court, dealing with a statute whose provisions were substantially the same as those of section 1479, said: "The debtor may, *at or before* the time of payment, direct the application of the payment, and if the creditor receives the money, he is bound by the direction. If the debtor omits to do so, the creditor may, generally, apply it to any debt he chooses, and when the application is made, he is bound by it, and cannot, without the consent of the other

party, change the application to another debt,'' citing 1 Am. Lead. Cases, 268—Notes to *Mayor etc.* v. *Patton,* and *Field* v. *Holland.*

"In *Clarke* v. *Scott,* 45 Cal. 86, 88, the trial court refused to receive evidence in proof of an oral agreement, made concurrently with the execution of the notes upon which the action was brought, whereby it was agreed or understood between the sureties on the notes in suit and the payee that any payments made to the creditor by the principal obligor should be applied to the payment of said notes. On appeal the supreme court held that the evidence was admissible, saying: "If it be a fact that at the time the defendants J. M. Scott, & Co., as sureties of the other defendant, S. W. Scott, signed the note in suit, it was *then* agreed or understood between all the parties that such payment as the defendant S. W. Scott might thereafter make should be applied toward the satisfaction of that particular note, it would be a circumstance tending, in some degree at least, to establish by presumption that the payments, when they were subsequently actually made by the defendant, S. W. Scott, without any intermediate change of his first intention, were to be so applied; and in this view we think that the proffered evidence ought to have been admitted." (See *Eppinger* v. *Kendrick,* 114 Cal. 620, 625, [46 Pac. 613]; 2 Am. & Eng. Ency. of Law, p. 444.)

"Nor need the communication to the creditor by the debtor of the latter's intention or desire to apply the payments toward the extinction of a particular obligation be expressed in writing, or in any technical or formal words, or delivered in any particular manner. "It will be sufficient that the intention is manifest, and that it comes to the knowledge of the other party." (2 Am. & Eng. Ency. of Law, p. 448.) It therefore necessarily follows that the communication may be shown by parol, whether made at the time of performance or at the time when the obligation as to which the direction was intended to operate was created and its terms committed to writing or at any time between the date of the making of the obligation and that of payments to the payee.

"It is very true, as counsel for the appellant declares, that the terms of a written instrument cannot be altered or varied by a parol agreement. This is, of course, an elementary rule. But, obviously, the effect of testimony disclosing a direction by a debtor to his creditor to apply payments to the extinction of

a particular obligation of several the former is under to the latter is not to modify or vary in the slightest degree the terms of the writing. In the case at bar, the defendants do not deny the due execution of the notes in suit or challenge the legal stability thereof in any respect. Indeed, they expressly admit the due execution of the notes, that they signed the same and thus became legally bound to the obligations thereof. In legal effect, their resistance to recovery upon the notes is wholly founded upon the claim that sufficient payments of money had been made by Cavagnaro & Co. to the bank to satisfy the notes and that the bank had wrongfully refused and failed to credit the notes with such payments. Their position is, in other words, no different in principle from the case where the maker of a promissory note has made payments on such note, thereby reducing the amount due thereon, which payments, however, had not been credited on the note by the payee. In such case, of course, no one will dispute the maker's right to resist payment of the original amount of the note, or his right to show such payments by parol testimony, nor will it be claimed that the effect of thus showing such payments would be to alter or vary the terms of the note. At any rate, our conclusion is that if the evidence discloses that contemporaneously with the execution of the notes, the makers thereof manifested or communicated to the bank their desire that the moneys received by the bank from Cavagnaro & Co. should be applied as indicated, it was the duty of the bank to so apply such moneys; that its failure to do so under the stated circumstances involved a violation of the rights of the defendants under the terms of section 1479 of the Civil Code, and that, since the notes themselves do not indicate the order of their payment with respect to other like obligations which Cavagnaro & Co. were under to the bank, it was competent to show such direction or communication by parol testimony. (*Hagood* v. *Swords,* 2 Bailey (S. C.), 305; *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, [76 Pac. 211, 213]; *Saffer* v. *Lambert,* 111 Ill. App. 410, 412; *Frutig* v. *Trafton,* 2 Cal. App. 47, 48, [83 Pac. 70].)

That the so-called oral agreement in question must be held to have involved a direction by the debtor to the bank to apply the moneys received by it from Cavagnaro & Co. in the manner and order explained, cannot be doubted.

The contention of the plaintiff that no evidence was introduced disclosing that the principal debtor, Cavagnaro & Co., took any part in the making of the oral agreement or the direction that said moneys should be applied as stated is not borne out by the record.   The witness, Gates, testified that he was president and manager of said corporation at the time it became insolvent, in October, 1905; that he attended to all its affairs at that time and also in the year 1906; that he was present as a representative of Cavagnaro & Co. when the oral agreement was had with the bank's manager, Mr. Tognazzi, and participated therein and that subsequently he apprised Mr. Brunner, an official of the bank, who, it was admitted, had authority to act for the plaintiff, of the understanding that the moneys paid by Cavagnaro & Co. should be applied upon the notes in suit, after the note for $4,780.94 was satisfied.   It is true that it does not affirmatively appear what the precise scope or limitations of Gates's authority were as president and manager of Cavagnaro & Co., but we have a right to infer, from the fact that he was the corporation's president and manager, and from the fact that he attended to and managed all its affairs both before and after it became embarrassed from financial difficulties, that he possessed full authority to act for and bind it on the occasion of the making of the oral agreement. and that his election, manifested to the bank, at the time referred to, as to the manner and order of the application of the moneys paid by Cavagnaro & Co. to the bank, was that of the latter, it being clear that said transaction involved an act within the ordinary or usual course of business of said corporation.   (*Martin* v. *Webb,* 110 U. S. 7, [28 L. Ed. 49, 3 Sup. Ct. Rep. 428]; *Carpy* v. *Dowdell,* 115 Cal. 677, [47 Pac. 695]; Waterman on Corporations, sec. 30; *Preston* v. *Central Cal. Irr. Co.,* 11 Cal. App. 190, [104 Pac. 462]; *Stevens* v. *Selma Fruit Company,* 18 Cal. App. 242, 251, [123 Pac. 212].)

"It is next claimed that certain testimony was erroneously permitted to go to the jury and that its effect was to prejudice the jury against the plaintiff.   The testimony of which complaint is thus made and which was brought out, over the objection of the plaintiff, in the examination of the defendants' witness Reynolds, who was connected with Hilbert Mercantile Company, at the time of the transactions concerned here, tended to show, so it is urged, that the bank, although entering into the agreement with the other creditors of Cavagnaro

& Co. to accept in full settlement of all claims against said corporation payments on the basis of 35 cents on the dollar, had in fact received payment in full of all indebtedness of Cavagnaro & Co. to it. It is manifest that such testimony could have no relevant bearing upon the issues made by the pleadings. It appears, however, that the only testimony showing or tending to show that the bank received more than 35 cents on the dollar was brought out in the cross-examination of the defendants' witness, Gates, by counsel for the plaintiff himself. Having stated, on cross-examination by the plaintiff's attorney, that the bank had received a settlement of Cavagnaro & Co.'s indebtedness to it the full amount thereof, that witness, still under cross-examination, was asked by a juror: "Was there anybody else excepting the bank who got 100 cents?" to which question the witness replied, no objection having been interposed thereto: "Not that I know of." The witness, Reynolds, was thereafter asked by the attorney for the defendants and permitted, against the objections of the plaintiff, to answer the following questions: "Did you know anything about the existence of the $8,750 note other than the $4,700 thirty-five per cent note at the time these notes were being signed in the office of the Swiss-American Bank? A. I did not. I learned of that after the fire. Q. Did you know that the bank was receiving, or was to receive, anything more than thirty-five per cent? A. I did not." Thus it will be observed that Reynolds did not himself say that the bank was receiving in settlement of Cavagnaro & Co.'s indebtedness to it an amount in excess of that compounded by the creditors of the former. While the questions thus put to the witness assumed the truth or existence of the fact to the proof of which they were addressed, and were for that reason improper, even though it was true that the bank received more than it agreed to accept, since, as stated, such testimony was wholly irrelevant to the issues, yet, it cannot be said, in view of the fact that counsel for the plaintiff himself brought out the fact on cross-examination or without objection permitted a juror to bring it out, that the questions to Reynolds or the form in which they were propounded could have added to or intensified the injury which the plaintiff had thus already inflicted upon himself.

"We have found no occasion for remanding the cause, and the judgment and order are accordingly affirmed."

Subsequently the case was reheard and the learned district court, while adhering to its original views, reversed the judgment and order upon the grounds: 1. That the lower court tried the case upon the erroneous theory that the sole consideration which moved the defendants to become parties to the notes was the oral agreement; and, 2. That an instruction given by the trial court evidenced this theory and misstated the law to the injury of the plaintiff. A hearing in this court was granted in order that we might further consider these points.

Examining the pleadings we find that the answer does not set up the oral agreement as the sole consideration for the signing of the note by defendants. The first defense pleaded to each note is that said note, both principal and interest, had been paid. To each note there is set up in the answer a defense based upon the verbal understanding with reference to the order of payment of the obligation of the F. Cavagnaro Company and the fact that sufficient money had been received by the bank on account of said company to pay the notes in suit if the credit had been applied in the agreed manner. This part of the pleading is set forth in the opinion of the district court of appeal which we have quoted above. When proof of the oral agreement was offered, however, the objection interposed by plaintiff was that the execution of a contract in writing supersedes all the negotiations which preceded or accompanied the making and signing of the instrument, and that proof of the oral agreement therefore was not admissible to vary the terms of the note. The court below held that the proffered evidence of the oral agreement was admissible on the ground that it constituted the sole consideration for the notes in suit. The ground of this ruling was admittedly erroneous but the ruling itself was nevertheless correct. The agreement or understanding pleaded by defendants did not alter nor modify the terms of the notes. Therefore appellant's objection to its introduction in evidence was untenable. It was admissible under section 1479 of the Civil Code. But the court manifested further by an instruction the theory upon which the case was tried. The instruction was as follows:

"You are hereby instructed that if you believe from the evidence that at the time the notes in suit were executed and as the sole consideration therefore there was an agreement

between the defendants and the Swiss-American Bank that any moneys coming into the hands of said bank from F. Cavagnaro Company would be applied first to the note for four thousand seven hundred and eighty and 94-100 dollars ($4780.94) due from the F. Cavagnaro Company to the said bank and then the balance to the payment of the two notes in suit, and if you further believe from the evidence that there subsequently came into the hands of the said Swiss-American Bank a sufficient sum to pay the said note for four thousand seven hundred and eighty and 94-100 dollars ($4780.94) and also the two notes in suit, if such application had been made, your verdict should be in favor of the defendants."

This instruction was erroneous for the reason stated in the quoted opinion of the district court of appeal,—namely, because it sought to confine the jury to the oral agreement as the *sole consideration* for the acts of the defendants in signing the notes. But defendants assert that plaintiff was not prejudiced by the instruction, which placed upon the defendants the burden of proving both the existence of the agreement and also that it was the sole consideration for the notes in suit. But appellant says he was entitled to have submitted to the jury directly the question whether or not the oral agreement involved a direction to the bank by the debtors for the application of the payments to the satisfaction of particular obligations. The instruction does not submit that question to the jury. There was no dispute at the trial regarding these facts: 1. The bank had loaned to the Cavagnaro Company the money represented by the notes; 2. Defendants had signed the notes; and, 3. Enough money had been collected on account of the Cavagnaro Company to pay the notes if applied according to the wishes of the defendants. The sole question pertinent to the oral arrangement which the court should have propounded to the jury was whether or not there had been a direction for the payment of the notes in the order for which defendants contended. The quoted instruction involves that very matter and more. It seems to us therefore that the subject of "sole consideration" may be eliminated from the instruction and it will state correctly the law regarding application of payments.

Appellant makes the further objection that the instruction refers to an agreement between the *defendants* and the bank and therefore is not by its terms applicable to a direction to

the bank by the *debtor*, the F. Cavagnaro Company, regarding the order of settlement of the latter's notes. Of course, no agreement between the plaintiff's assignor and the defendants without the concurrence of the debtor, the F. Cavagnaro Company, would bring the facts of the case under the provisions of section 1479 of the Civil Code. But we do not think the jurors were misled by the careless and inaccurate use of the word "defendants." All of the proof was directed to an agreement between the bank and all of the parties to the notes relative to the order of payment. There was no testimony regarding any agreement between the bank and the Borgfeldts without the other parties to the note, including the debtor; and the jury could not have been misled in reference to the "agreement" mentioned by the court in the instruction. Assuming that the court did adopt an erroneous theory upon the subject of the consideration for the notes (although appellant himself offered an instruction by which the court's attention was directed to section 1479 of the Civil Code, but which was rejected for certain erroneous statements of the law) the fact remains that the jury considered and determined the one vital question in the case, i. e., was there the direction by the debtor to the bank that the notes of the F. Cavagnaro Company should be paid in the order specified in the answer.

For the reasons given in the original opinion of the district court of appeal and those which we have added, the judgment and order are affirmed.

Shaw, J., Sloss, J., Lorigan, J., and Angellotti, C. J., concurred.