[Civ. No. 21133.   Second Dist., Div. One.   Nov. 9, 1955.]

PACIFIC CONCRETE PRODUCTS CORPORATION (a Corporation), Appellant, v. JOHN S. DIMMICK et al., Respondents.

Delvy T. Walton for Appellant.

John W. Pares for Respondents.

WHITE, P. J.—In this action, plaintiff, Pacific Concrete Products Corporation, sought and procured the immediate possession of certain personal property under the provisions of section 509 et seq. of the Code of Civil Procedure. During

the trial it was stipulated by the parties that the property was worth $2,742, and that, in the event of judgment for defendants, plaintiff was unable to restore possession to them. Plaintiff has appealed from a judgment for defendants for $2,742 and costs.

One of appellant's contentions is that "where the cause of action is in claim and delivery, no authority appears to embrace a claim for damages . . ." In the instant action, however, the judgment is not for damages but for the value of the property. "In an action to recover the possession of personal property . . . if the property has been delivered to the plaintiff . . . judgment for the defendant may be for . . . the value thereof in case a return cannot be had . . ." (Code Civ. Proc., § 667.)

As stated by appellant in its opening brief, the right to possession by plaintiff at the commencement of the action determines its right to relief in claim and delivery. It follows that appellant's right to possession of the property at any other time is not in issue. The trial court did not err in excluding evidence respecting appellant's earlier unrecorded conditional purchase contract with a stranger to this action.

The court found, among other things, that it is not true that at the time of the commencement of the action plaintiff was entitled to the possession of said property; and that the allegations of respondents' affirmative defense are true. In effect, the affirmative defense was that respondents had bought and paid for the property and were at the time of the commencement of the action entitled to possession thereof.

In appellant's opening brief it is stated that "There is absolutely no evidence in the record to sustain any such purchase from plaintiff of the personal property which is the subject matter of this litigation, or any writing confirming any such arrangement, alleged to be oral and later reduced to writing. No evidence was offered of any such character, and we are convinced none is or was ever in existence.

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict (or judgment) is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury (or

judge). When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

In support of the judgment from which the instant appeal was taken, we find in the record before us the following:

John S. Dimmick, one of the defendants, testified that he and his mother are partners doing business under the fictitious firm name of Adobe Engineers; that plaintiff was not on the commencement of the action entitled to possession of the "racks and pallets" (equipment for the manufacture of cement blocks) because plaintiff had sold them to defendants; that defendants had paid for them by delivering $3,200.00 worth of cement blocks; that Nathan D. Gorin, plaintiff's vice-president and general manager, had told Dimmick where to deliver the blocks; that the blocks had been delivered as indicated on the delivery slips put in evidence; that most of the persons and firms to whom they had been delivered were unknown to defendants, and the blocks were shipped to them on Gorin's order for the account of Pacific Concrete Products Corporation; that he understood that all these operations were the business of Pacific Concrete Products Corporation. Defendant first learned of Mr. Gorin's connection with Pacific Concrete Corporation when the manager of the Produce Branch of the Bank of America introduced them to each other as managers of similar businesses in the latter part of 1952. That at the time of defendants' purchase of the racks and pallets, he knew that Mr. Gorin was vice-president and general manager, that Laurence Holzman was president and was ill, and he believed that Mr. Walton was secretary-treasurer, and had no active part in the business. Defendants' arrangement was with Mr. Gorin as such general manager. Defendants' own truck was sent to plaintiff's El Monte plant to pick up the racks and pallets. At that time Mr. Gorin told defendant that the corporation owned them, and that he had authority to sell them. Defendant believed Gorin and relied upon his statements and took the racks and pallets in good faith. Defendant did not know that the racks and pallets were being purchased by plaintiff on conditional sale contract.

Gorin testified that he was the vice-president and general manager of the plaintiff corporation; that as such he agreed to sell to defendants the racks and pallets; that at that time

Mr. Holzman was in the hospital in Cleveland; that there was a total of issued stock of $25,000; that Mr. Holzman had $15,000 and Gorin himself had $10,000; that when he saw Mr. Holzman in the hospital, both thought he was getting well; that the corporation's need of funds was discussed; that Mr. Holzman told Gorin to use his own judgment about selling some of the equipment they were not using to obtain money to keep things going until Holzman returned. That the object of the transaction with defendants was to raise money to continue the operation of plaintiff corporation and to pay its obligations, including the covering of checks which had been written and returned by the bank; that he sold the racks and pallets in order to make those checks good; that whatever he got from time to time he applied to whatever had to be paid first in his estimation; that he got in close to $3,000 for those blocks; that he paid the corporation for the portion of the blocks delivered to his own place in Newport; that those blocks were part of the consideration for the racks and pallets; that he did not know that he "could not dispose of any of the equipment unless he got a release under the chattel mortgage"; that he did not tell Dimmick that the corporation did not own the racks and pallets; that all the money received through this transaction with defendants was used for corporate purposes, but none of it was paid on the $40,000 conditional sale contract covering machinery and equipment which included the racks and pallets.

Delvy T. Walton, attorney for plaintiff, stated during the trial that the conditional sale contract referred to had not been recorded before the sale to defendants.

There is substantial evidence in the record supporting the finding that respondents had bought and paid for the racks and pallets and were entitled to possession thereof when the instant action was commenced.

That the record fails to disclose a written confirmation of the oral agreement of exchange of personal properties is of no consequence, since the agreement had been fully performed.

Appellant further contends that its general manager had no power to bind the corporation by such an agreement and states that no corporate agent has the right to sell "vital property . . . without which it could not operate" and that "the power to operate a business is radically different from the authority to sell its essential machinery." No doubt, that argument was first made in the trial court and we must as-

sume that the trial court found that the racks and pallets were neither vital nor essential and that the sale of $2,752 worth of equipment was in the regular course of business of a corporation which was then buying on contract and presumably had possession of some $40,000 worth of equipment, and, according to its general manager, did not need all of it. Section 3901 of the Corporations Code has no application to the facts of the instant action.

■ "The general manager of a corporation is more than a mere agent. Except as expressly restricted, he is empowered in the name of the corporation to do everything the corporation itself could do, and the power to perform a particular act will be inferred from his general authority." (13 Cal.Jur. 2d 108, Corporations § 336, and cases there cited.) In the instant action, Gorin, as such vice-president and general manager, had authority to do any act which in his judgment was suitable to protect the interests of the corporation, or to preserve its property. (*Los Angeles L. Co.* v. *City of Los Angeles,* 106 Cal. 156, 161 [39 P. 535].) ■ From the facts that he was the corporation's vice-president and general manager, and that he attended to and managed all its affairs both before and after it became embarrassed from financial difficulties, the trial court had the right to infer that he possessed full authority to act for and bind it on the occasion of the making and performance of the oral agreement. (*Ray* v. *Borgfeldt,* 169 Cal. 253, 265 [146 P. 679].)

The judgment is affirmed.

Doran J., and Nourse (Paul), J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 5, 1956.

---

*Assigned by Chairman of Judicial Council.