Filed 4/22/15  Kardashian v. Hurley CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KIM KARDASHIAN et al., | B255440 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC526333) |
| v. | |
| CHAD MEREDITH HURLEY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Ruth Ann Kwan, Judge.  Affirmed.

Fenwick & West, Rodger R. Cole, Songmee L. Connolly, Jennifer J. Johnson and Ciara N. Mittan, for Defendants and Appellants.

Browne George Ross, Eric M. George, Russell F. Wolpert and Elena Nutenko for Plaintiffs and Respondents.

_____

Chad Hurley and AVOS Systems, Inc. (Appellants) appeal from the denial of their special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] Appellants sought to strike a complaint filed against them by Kanye West and Kim Kardashian (Respondents) for broadcasting a video of West's marriage proposal to Kardashian in violation of a confidentiality provision. We affirm.

## FACTS

West and Kardashian are well-known personalities in the entertainment industry. Among other things, West is a musician and Kardashian stars in a television program called *Keeping Up with the Kardashians.* Their relationship has been extensively chronicled by the press. West proposed to Kardashian at AT&T Park in San Francisco on October 21, 2013, during her birthday party. Hurley was one of several dozen guests in attendance. Although he was not personally invited, Hurley was admitted as the guest of someone who was invited. Hurley cofounded Youtube and is currently the CEO of AVOS Systems, Inc., dba MixBit (MixBit). MixBit is a collaborative video application that allows people to download videos taken on their phones, edit them, and splice them. Hurley videotaped the event on his phone and downloaded a two and one-half minute edited video to MixBit the day after the event. At approximately 6:00 p.m. on October 22, 2013, Hurley sent a congratulatory tweet to Respondents which included a link to his video on MixBit. Hurley's video garnered considerable attention from the media and the public. The video remained on MixBit until November 11, 2013, when it was taken down pursuant to Respondents' request. Footage of the proposal and the party aired on *Keeping Up with the Kardashians* on February 16, 2014.

Respondents brought suit against Appellants on October 31, 2013, for breach of contract, fraud, and unjust enrichment. The lawsuit was based in large part on a "Celebrity Appearance Release" signed by Hurley. Hurley was asked to sign the release after West proposed to Kardashian, but prior to leaving the event several hours later. The release is a one-page document allowing M Cable Television and its "respective

---

[1] All further section references are to the Code of Civil Procedure unless otherwise specified.

2

parents, affiliates, subsidiaries, licensees, successors and assigns" to broadcast Hurley's image. It also reserved the exclusive right to broadcast and make use of the event.

To that end, the release contained a confidentiality provision, which stated:

"CONFIDENTIALITY  I acknowledge and agree that any and all information disclosed to or obtained by myself concerning or relating to the Program,[2] including but not limited to the premise and concept of the Program, the nature of certain events in the Program, my appearance in the Program as well as the activities occurring in connection with the Program and the outcome of the Program (collectively, the 'Confidential Information'), shall be strictly confidential, and I hereby agree not to disclose any such Confidential Information to any individual or entity. I acknowledge and agree that any disclosure of such Confidential Information is in violation of this agreement and shall constitute a material breach of this agreement and shall cause Producer and its employees, contractors, agents, licensees and assigns irreparable injury. I further agree that in the event of any disclosure by myself in violation of this agreement, I shall be liable to Producer and its employees, contractors, agents, licensees and assigns, and I agree that Producer and its employees, contractors, agents, licensees and assigns shall have the right to utilize all available remedies in law or equity, including both financial and injunctive relief, to seek retribution for any breach of this confidentiality provision. I expressly agree that Producer and its employees, contractors, agents, licensees and assigns shall be entitled to any and all relief available to Producer and broadcasters as reasonable compensation for the significant harm which will be incurred by Producer and its employees, contractors, agents, licensees and assigns as a result of any such disclosure and/or breach of this agreement by myself."

The release permitted the production company to assign its rights under the release, which it did, to Respondents.

---

[2]     "Program" was defined in the release as "the program currently entitled 'Keeping Up with the Kardashians' and/or any related programming (e.g. 'Kourtney & Kim Take Miami,' 'Khloe & Lamar') and/or any other title it may hereafter be called . . . ."

3

*The Anti-SLAPP Motion*

Appellants filed a special motion to strike the complaint under the anti-SLAPP statute.[3] (§ 425.16.) Among other things, Appellants argued there was no consideration offered to Hurley in exchange for the release and the claims against AVOS were meritless since the contract was between Hurley individually and M Cable Television. In support, Hurley submitted a declaration asserting he did not attend the event as a representative of AVOS. He further stated he did not read the release and was never told nor asked not to publish anything from the event or that he would have to leave if he refused to sign the document. Hurley also submitted evidence that multiple individuals tweeted about the marriage proposal and other photographs and videos of the event were broadcast through multiple media outlets. In particular, Kardashian tweeted the news at 8:41 a.m. on October 22, 2013. This was retweeted 10,731 times.

In opposition to the anti-SLAPP motion, Kardashian submitted a declaration stating she did not see any video images of the proposal on the internet prior to Hurley's, "even though . . . [she] specifically checked." Kardashian admitted other guests recorded images for their own personal use, which was not prohibited by the release. However, the tweets and a small number of snapshot photos of the event published by others varied markedly from Hurley's video: "Mr. Hurley's posting was an audiovisual recording lasting approximately two and a half minutes, and it included spliced videos of the marriage proposal as well as other highlights of the evening. Therefore, it is entirely false to suggest that Mr. Hurley's publications followed similar broadcasts, or that they were all comparable. There is no similarity whatsoever between a written email or tweet, or a brief and isolated image, on the one hand, and a several minute long video recording including the actual proposal, on the other."

---

[3]     Appellants also sought attorney fees in connection with their motion. Their request for fees was denied and they do not contend that ruling was erroneous. Respondents also sought fees on the ground the anti-SLAPP motion was frivolous and filed to cause unnecessary delay. That request was also denied and Respondents have not appealed from that order.

4

Respondents also submitted a declaration from a marketing expert who opined MixBit benefitted from the exposure it received after Hurley posted the video. In particular, MixBit received in excess of 1.5 million hits after it was posted and various media outlets provided links in their stories to MixBit's website.

Appellants' motion was denied by the trial court on March 18, 2014. The court found the causes of action arose from protected activity, but that Respondents had demonstrated a probability of prevailing. Hurley timely appealed.

**DISCUSSION**

## I. Applicable Law

A strategic lawsuit against public participation, known as a SLAPP suit, seeks to chill or punish a party's exercise of his constitutional rights to free speech and to petition the government for redress of his grievances. Section 425.16 provides for the early dismissal of SLAPP suits by means of a special motion to strike, known as an anti-SLAPP motion. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*); § 425.16, subd. (b)(1).) A trial court utilizes a two-step process to determine whether an action is a SLAPP suit subject to an anti-SLAPP motion. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); [citation].)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

To demonstrate a probability of prevailing, a plaintiff must " ' "state[] and substantiate[] a legally sufficient claim." [Citation.] "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " [Citation.]' [Citation.]" (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) "In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative

5

probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

This is the same standard of review that is used when determining motions for nonsuit, for directed verdicts, or for summary judgment. (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 630.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West Realty*) quoting *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 106, original italics.) The showing that a plaintiff is required to make on the second prong is "not high" and need only demonstrate a "minimum level of legal sufficiency and triability." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699.) A court of appeal reviews a trial court's denial of an anti-SLAPP motion de novo. (*Rusheen, supra,* 37 Cal.4th at p. 1048, 1055; *HMS Capital Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

In this opinion, we need only address the second prong of the anti-SLAPP analysis because there appears to be no dispute that the first prong has been fulfilled. Certainly, Respondents have not appealed the trial court's ruling that Appellants met their burden to show the causes of action arose from protected activity. In any case, we affirm the trial court's ruling in its entirety. Respondents have met their burden to show a probability of prevailing by presenting a prima facie claim for breach of contract, fraud, and unjust enrichment.

## II.     Breach of Contract

This seems to us to be a fairly straightforward cause of action involving the potential violation of a confidentiality clause. Respondents allege Appellants breached the confidentiality provision of the release by revealing confidential information without

6

permission.  The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to the plaintiff.  (*Oasis West Realty, supra,* 51 Cal.4th at p. 821.)  Respondents submitted evidence that Hurley signed the release and that it contains a confidentiality clause restricting Hurley from disclosing any confidential information about events and activities relating to the television program, *Keeping Up with the Kardashians.*  Respondents also showed Hurley posted his video of the marriage proposal and the surrounding festivities the day following the event.  Further, Plaintiff's expert discussed how Hurley's publication of the video prior to Respondents' own broadcast usurped their exclusive rights to publicize the event, causing them harm.  This is sufficient to establish a prima facie claim for breach of contract.

Appellants contend Respondents have not met their burden because the breach of contract action has nothing to do with AVOS as Hurley was not representing AVOS at the event.  They also dispute the contract's enforceability against Hurley as an individual, contending no consideration was given to Hurley in exchange for signing the release.  Even if the contract were enforceable against Hurley, he alternatively claims he did not breach it because the video he posted did not constitute "confidential information" as defined under the release.  Appellants' contentions as to the enforceability of the release against Hurley are specious and lack merit.

"A written instrument is presumptive evidence of consideration."  (Civil Code, § 1614.)  Moreover, signing the release gave Hurley the opportunity to appear in *Keeping Up with the Kardashians* and the opportunity to remain at the party.  Respondents submitted evidence that Hurley would have been asked to leave if he refused to sign the release.  This is sufficient evidence of consideration—the proverbial "peppercorn"—to surmount the relatively low hurdle of establishing a prima facie case.  (*San Diego City Firefighters, Local 145 v. Board of Administration Etc.* (2012) 206 Cal.App.4th 594, 619.)

7

Hurley's next argument—that he did not post "confidential information" as defined under the release—is similarly lacking in merit. Confidential information is broadly defined in the release as "any and all information" relating to *Keeping Up with the Kardashians* and its offshoots. Hurley acknowledged that he "agreed to sign the release for use of [his] image" in any future episode of *Keeping Up with the Kardashians* or its offshoots. In fact, Hurley appeared in the background on the program when the proposal aired on February 16, 2014. A professional film crew was present to film the event and was visible to everyone in attendance. Given these circumstances, a reasonable interpretation of the phrase "confidential information" could include the events filmed and published by Hurley. Hurley's attempt to define the phrase "confidential information" differently should be reserved for later proceedings. At this stage, Respondents have presented a legally sufficient showing to sustain a favorable judgment if the evidence they have submitted is credited.

The harder question is whether Respondents have established a prima facie case against AVOS for breach of contract since Hurley's signature on the release does not indicate he signed it as a representative of AVOS. Hurley stated in his declaration he did not attend the event as a representative of AVOS. Hurley's declaration, however, does not defeat Respondents' claim against AVOS as a matter of law. This is because whether someone is acting on behalf of a company is a question of fact. (*Pacific Concrete Products Corp. v. Dimmick* (1955) 136 Cal.App.2d 834, 838.)

Respondents allege in their complaint and submitted evidence that Hurley needed publicity for his foundering new venture, and he used his video of the proposal to promote MixBit. Hurley sent a congratulatory tweet to Kardashian and West with a link to the MixBit video from the same Twitter account he used to dispute a news article about MixBit. Moreover, Hurley's apology to Kardashian and West after he learned they were upset about the video was sent from his email address at AVOS. A magazine article indicated a press release had been issued describing the video clip and the article quoted from the press release. The article did not mention whether AVOS issued the press release, but it did note that "Hurley uploaded the video on his new video collatorative

8

app, MixBit." Hurley also chose to post the video on MixBit, rather than on any personal accounts on Facebook, Vine, or Youtube. As the CEO of AVOS, Hurley was " ' "something more than an agent. He is the representative of the corporation itself." ' " (*Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 17.) From the record, it can reasonably be inferred that Hurley acted on behalf of AVOS. Hurley's statement to the contrary is merely evidence to be weighed by a jury at trial, not by the trial court in judging an anti-SLAPP motion. (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1176.)

## III. Fraud

Respondents' fraud claim rests on the theory Hurley had no intention of abiding by the confidentiality provision at the time he signed the release. To adequately state such a cause of action, Respondents were required to allege Hurley made a promise regarding a material fact without any intention of performing it at the time he made the promise, they reasonably relied on the promise, and they were injured. (*Regus v. Schartkoff* (1957) 156 Cal.App.2d 382, 389.) Respondents made a prima facie showing of fraud by submitting evidence that Hurley signed the release, they allowed him to remain at the party and appear in *Keeping Up with the Kardashians,* he published the video and publicized it very soon after the event, and they were harmed as a result.

Appellants attempt to defeat Respondents' fraud claim on three grounds: (1) Respondents did not rely on any promise made to them; (2) Hurley lacked any fraudulent intent—he did not read the contract and had no knowledge of any purported confidentiality obligation; (3) Respondents lacked reasonable reliance because Hurley had already taken the video before he was asked to sign the release. We find none of these arguments persuasive.

Hurley contends, "[t]he record does not reflect that [Respondents] read or relied on the Release that evening or before his posting . . . [¶] . . . the record fails to identify anyone at E! who actually read or relied on the signed Release to his or her detriment. . . . Instead, the trial court again relied on the mere existence of a purported assignment to erroneously presume a viable fraud claim was stated." This argument is baseless.

9

Hurley represented he would keep confidential certain information about the event to the production company, which then assigned its rights to Respondents.[4] It is well established the right to recovery by a fraud action may be assigned. (*American Trust Co. v. California Western States Life Ins. Co.* (1940) 15 Cal.2d 42, 67.) Respondents presented evidence that, in reliance on Hurley's compliance, Respondents allowed him to stay at the party and broadcast his image in the episode of *Keeping Up with the Kardashians* featuring the proposal. That is sufficient evidence of reliance for our purposes.

Hurley next contends there was no evidence of fraudulent intent because it is "uncontroverted" he failed to read the contract and was unaware of the confidentiality provision. Thus, "it is impossible for Mr. Hurley to have had the requisite present intent not to perform." Not so. Fraudulent intent may be inferred from circumstances surrounding the transaction, including the relationship and interests of the parties, any change in circumstances, and the time between the promise to perform and its repudiation. (*Tenzer v. Superscope* (1985) 39 Cal.3d 18, 30; *Fross v. Wotton* (1935) 3 Cal.2d 384, 393.) Here, Respondents have shown that Hurley's new venture, MixBit, was not doing well, he posted the video on MixBit, which provided it with significant publicity, and he did so within hours of leaving the event. A jury may reasonably infer fraudulent intent from these circumstances.

Appellants lastly contend Hurley signed the release after he had already recorded the proposal. Thus, he could have recorded the event, published his video, and left the event without ever signing the release. Alternatively, Hurley could have refused to sign the release and posted his video. According to Appellants, this shows Respondents cannot establish any reliance that caused their alleged damages. Appellants' speculation does not defeat Respondents' fraud claim as a matter of law. Hurley signed the release and, as discussed in detail above, Respondents relied on the promises he made under the release. In any event, we agree with Respondents that it is a question of fact as to

---

[4]     For purposes of this appeal, Appellants concede the assignment is valid.

whether their damages would have been the same had Hurley left early and posted a different video on MixBit, one that did not include any of the after-proposal toasts and celebrations.

## IV.   Unjust Enrichment

Appellants argue Respondents' claim for unjust enrichment fails for the same reasons their breach of contract and fraud claims fail.  Because we find Respondents have established a prima facie claim for fraud and breach of contract for purposes of an anti-SLAPP motion, they have also established a prima facie case for unjust enrichment. " 'The elements for a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." ' "  (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 769.)  Respondents submitted evidence that AVOS and Hurley unjustly received the benefit of publicity at Respondents' expense by breaching the terms of the release and fraudulently promising to abide by its terms without the intention of performing.

**DISPOSITION**

The order denying Appellant's anti-SLAPP motion is affirmed.  Respondents to recover their costs on appeal.

BIGELOW, P.J.

We concur:


RUBIN, J.



FLIER, J.

11